NATIONAL LIFE & ACCIDENT INS. CO. *v.* EDDINGS.

(*Jackson,* April Term, 1949.)

Opinion filed June 10, 1949.

514

Moss & Benton, of Jackson, for plaintiff in error.

A. J. Woodall and J. L. Harrington, both of Jackson, for defendant in error.

Mr. Special Justice Albert Williams delivered the opinion of the Court.

In this action J. L. Eddings sued the National Life and Accident Insurance Company to recover benefits on account of sickness, under the terms of an industrial insurance policy. The policy contained a provision that the insurer assumed no obligation unless the insured was in sound health when the policy was issued, and the defense of the company was that the plaintiff had not been in sound health at that time. Under previous decisions of this Court no room was left for any issue upon the good faith of the plaintiff, the single question being the erstwhile state of his health. *Metropolitan Life Ins. Co.* v. *Chappell*, 151 Tenn. 229, 269 S. W. 21; *Life & Casualty Ins. Co.* v. *King*, 137 Tenn. 685, 195 S. W. 585.

From a judgment for the plaintiff the defendant appealed in error to the Court of Appeals and that Court affirmed the judgment. *Certiorari* was granted and in a *per curiam* memorandum this Court suggested to the parties that they particularly address themselves to the question of how far a presumption arising from a litigant's failure to produce evidence may itself supply evidence against him.

That question of law seemed determinative because the defendant had introduced no testimonial evidence that the plaintiff was not in good health at the time the policy was issued but to raise that presumption relied

upon the plaintiff's failure to introduce available medical evidence and his refusal to make an agreement which would have facilitated the introduction of such evidence by the defendant.

The plaintiff testified that he was discharged from the Army on January 7, 1946; that at the time of his discharge he was given the usual physical examination, after which time he dropped his government insurance and took insurance with the defendant; that from the time of his discharge until the date of his policy, February 9, 1946, he had no occasion to go to a doctor; that about a month and a half after the policy was issued he went to the Veterans' Hospital in Memphis where he stayed thirteen days and for such period of sickness drew benefits upon the insurance policy in question; that he went to the Veterans' Hospital again in October, 1946, and remained there until January 27, 1947, that interval being the period for which benefits are sought in the present suit.

On cross-examination the plaintiff testified that in November or December, 1945, before his discharge from the Army, he went to the Army Hospital at Mitchell Field, New York, because his stomach hurt him, and that an examination was made and X-ray pictures taken. He testified that when he went to the hospital in October, 1946, he was told that he had a peptic ulcer.

Furthermore, the plaintiff admitted that he had received a copy of a letter from counsel for the defendant addressed to his own attorney and that such letter was as follows:

"Re: *J. L. Eddings* v. *The National Life and Accident Insurance Company*, Circuit Court of Madison County.

"Confirming my recent conversation with you regarding depositions which the defendant desires to take in the above-styled case, I beg to advise that the defendant desires the consent of the plaintiff, J. L. Eddings, to take the depositions of the custodian of the records at the Veterans Administration Hospital at Memphis, and of the doctor or doctors who examined and talked to J. L. Eddings about his physical condition when he was in said hospital from March 15 to March 27, 1946, and from October 22, 1946 to January 27, 1947. We expect to show by such depositions what the doctors who examined and treated Eddings thought of his condition, how long he had suffered from stomach trouble or ulcers, etc., and also what Eddings told them in regard to similar ailments in the past, his periods of residence in government hospitals while in the Army, and how long he had suffered from stomach trouble.

"We have been informed by officials at the hospital that they will not give such depositions, nor allow them to be taken, without Eddings' consent. On behalf of the defendant in this case, I therefore now request that you have him give his consent or authorize this hospital in writing to permit the taking of the depositions. If the consent is not given, we expect to make known to the Court and jury on the trial of the case that this testimony is not available because of the refusal of the plaintiff to consent to the taking of the deposition.

"Please let me hear from you at an early date, for if we are to take the depositions we would like to do so in time to have them typed and ready so that we can try the case at the next term of the Circuit Court, which begins June 16th.''

He admitted that upon advice of counsel he declined to consent to the taking of the depositions as requested and to the production of the hospital records. This was all the plaintiff's evidence.

The insurance company insists that a presumption raised by the plaintiff's failure to introduce any medical evidence, and by his refusal to cooperate in producing it, amounts in itself to such evidence, against which, under the authority of the *American National Insurance Company* v. *Smith*, 18 Tenn. App. 222, 227, 74 S. W. (2d) 1078, the mere opinion of non-medical witnesses is unacceptable, so that its motion for a directed verdict should have been sustained. Hence it becomes necessary to examine the force and effect of the plaintiff's failure to offer medical evidence which admittedly existed.

■ "The failure to call an available witness possessing peculiar knowledge concerning facts essential to the party's cause, direct or rebutting, or to examine such witness as to the facts covered by his special knowledge, especially if the witness be naturally favorable to the party's contention, relying instead upon the evidence of witnesses less familiar with the matter, gives rise to an inference, sometimes denominated a 'strong presumption of law,' that the testimony of such uninterrogated witness would not sustain the contentions of such party in the suit."

This was the language adopted by this Court in the case of *Fisher* v. *Travelers' Insurance Company*, 124 Tenn. 450, 138 S. W. 316, 321, Ann. Cas. 1912D, 1246, the substance of which has been reiterated a number of times. *Western Union Telegraph Company* v. *Lamb*, 140 Tenn. 107, 203 S. W. 752; *Davis* v. *Newsome Auto Tire & Vulcanizing Company*, 141 Tenn. 527, 213 S. W.

914; *National Life & Accident Insurance Company* v. *Morrison*, 179 Tenn. 29, 162 S. W. (2d) 501.

■ This inference, however, notwithstanding the "strong presumption of law" that recommends it, is but one of the logical deductions which, in the language of Greenleaf, depend alone on their "natural force and efficacy to generate belief and conviction in the mind of the jury." Greenleaf on Evidence (Fifteenth Ed.), Vol. I, sec. 44. For a trial judge to tell jurors how much import should be given such deductions in comparison with other matters properly before them would be an infringement upon their right to weigh the evidence.

■ It is proper for a trial judge to instruct the jury that the law recognizes the kind of inference that may arise from the failure to produce available testimony and that jurors are entitled to presume that such failure to introduce evidence indicates that it would not be favorable to the party who fails to introduce it. In the present case the trial judge so instructed the jury and went so far as to apply the rule to the particular facts of the case, saying:

"In this case, where the evidence is undisputed that demand was made, or request made, of the plaintiff that he consent for the defendant to take the deposition of doctors at the Veterans Administration Hospital, Memphis, Tennessee, and to produce the records of said hospital as to the treatment given plaintiff there, the history and diagnosis of his case, the said doctors and hospital authorities having refused to give their depositions or produce their records without plaintiff's consent, you may presume that such evidence and such records would operate against plaintiff and be against his interest in this suit."

This was about as far as the trial judge could properly go in stating the pertinent testimony and declaring the applicable law. If he had gone to the extent of saying "you must presume" he would have committed error. *Tennessee Cent. Railroad Co.* v. *Morgan*, 132 Tenn. 1, 175 S. W. 1148. The same would have been true if he had required the jury to attribute any fixed degree of probative force to the inference when made. What force is possessed was intrinsic and was not susceptible to being either augmented or diminished by any artificial rule.

No more can be said for the inference or presumption about which the trial judge instructed the jury than that it might well have cast doubt upon the plaintiff's testimony that he was a well man when the insurance policy was issued. Even though it was proper to infer that the medical testimony which the plaintiff failed to submit would have been unfavorable to him, the jury was not compelled to determine in what respect it would be unfavorable nor to accord to this inference a particular weight in comparison with other facts and circumstances.

The Court of Appeals is of the opinion that the inference arising from the failure of a party to produce available witnesses or from his failure to cooperate with his adversary in bringing pertinent facts before the Court, does not amount to substantive proof which can be substituted for a fact required to make out his adversary's case. To this we agree. The inference to be drawn from such conduct may well be a persuasive factor in the process of weighing and interpreting the testimony offered by the party who can produce evidence and fails to do so, but it cannot be treated as affirmative evidence of a fact otherwise unproved. Logic and precedent combine to establish this conclusion. "The extent of a

party's right to invoke his opponent's failure to call an available witness is merely to impair the value of the opponent's proofs and to give greater credence to the positive evidence of the party on any issue in which it is shown that the witness might have had knowledge.'' 31 C. J. S., Evidence, sec. 156, p. 860. See also *Milio* v. *Railway Motor Trucking Co.*, 257 App. Div. 640, 15 N. Y. S. (2d) 73.

''The presumption may be used to throw light on evidence already in; not to make evidence. . . . No presumption or inference from the non-production of evidence is potent enough to supply independent evidence of a fact which is wholly unproved by other evidence.''! Jones' Commentaries on Evidence, sec. 97.

A full annotation upon the subject appears in 70 A. L. R. 1326-1330. The cases there cited and the reason supporting them justify the adoption of the following statement quoted from American Jurisprudence and relied on by the Court of Appeals in this case:

''It may be fairly implied from the cases that the presumption or inference arising from the failure of a party to produce available witnesses or evidence or to testify does not amount to substantive proof and cannot take the place of proof of a fact necessary to the other party's case. Thus, the failure to produce books and papers which have been called for does not raise the inference that, if produced, they would establish the facts which it is alleged they would prove. The only inference that may be drawn is that the testimony if given would not have been favorable to the party who did not produce the evidence. Evidence of such conduct is persuasive rather than probative and cannot be invoked as substantive proof of any facts essential to the case of

the opponent. The rule has been stated that the presumption will not supply a missing link in an adversary's case and cannot be treated as independent evidence of a fact otherwise unproved. It has been stated that the presumption arising from the nonproduction of evidence does not relieve the other party from the burden of proving his case.'' 20 Am. Jur., Sec. 193.

It is true that cases may be found where courts have referred to the inference from failure to produce available proof as "evidence in itself,'' *Illinois Central R. Co. v. H. Rouw & Co.,* 25 Tenn. App. 475, 159 S. W. (2d) 839, 844, or as "legal proof,'' *Tabor* v. *Mutual Life Ins. Co. of N. Y.,* 4 Cir., 13 F. (2d) 765, 770, quoted by this court in *Provident Life & Accident Ins. Co.* v. *Prieto,* 169 Tenn. 124, 83 S. W. (2d) 251, but these are detached expressions, made in passing, and were not employed in cases where it was being urged that the inference as independent evidence was able to stand alone and determine a factual issue upon which there was no other proof. We have not been able to find a case in which such expressions have been directed to answer such a question as is now before us.

Thus in the *Prieto case,* cited and relied on by petitioner, the court quoted from another Tennessee case, *Brown* v. *Sun Life Insurance Co.,* Tenn. Ch. App., 57 S. W. 415, 51 L. R. A. 252, that a presumption "turns the scale,'' which of course implies an issue otherwise approximately balanced. It is one thing to use in a collateral reference the expression that an inference is "legal proof'' and quite another to say that it is sufficient in itself to establish some disputed fact as a matter of law. It is not an uncommon thing that general expressions used in disassociated cases, when invoked to apply be-

yond their original meaning, are found inapplicable in the light of special instance. Once again the words of Chief Justice MARSHALL become pertinent, "It is a maxim not to be disregarded that general expressions, in every opinion are to be taken in connection with the case in which those expressions are used." *Cohens* v. *Commonwealth of Virginia*, 6 Wheat. 264, 398, 19 U. S. 264, 398, 5 L. Ed. 257, 290.

In this case there is no reason to believe that the jurors did not accord consideration to the fact that the plaintiff had failed to produce certain available evidence. They were pointedly advised that it was permissible to do so. If any doubt was engendered by this consideration the jury resolved it. After all the inference is what has been called a deliberative rather than a probative presumption, that is to say, one employed in the process of weighing evidence rather than in the process of discovering it.

From this it results that our only remaining inquiry is whether the plaintiff had made out a *prima facie* case. It was not incumbent upon him to introduce proof negativing the possibility that he was in bad health at the time the insurance policy was issued. His bad health, if it existed, was a matter of defense.

Whether or not the insurance contract be considered as carrying the provision about sound health as a condition precedent, the issuance and delivery thereof may be treated as some evidence that it became a valid and subsisting contract, and so establish *prima facie* that the insured was in good health at the time of the issuance. *Logan* v. *New York Life Ins. Co.*, 1919, 107 Wash. 253, 181 P. 906; *Console* v. *Prudential Ins. Co.*, 1917, 67 Pa. Super. 52; *Burgess* v. *Pan-Am. Life Ins. Co.*,

Mo. Sup. 1921, 230 S. W. 315; *Bathe* v. *Metropolitan Life Ins. Co.*, 1910, 152 Mo. App. 87, 132 S. W. 743; *Weddle* v. *Prudential Ins. Co.*, 1936, 130 Neb. 744, 266 N. W. 624.

 In the present case the defendant not only issued the policy and collected premiums thereon, but paid out benefits which had accrued under its terms. It would seem all the more reasonable that it should be incumbent upon the insurer not only to raise the question of unsound health if such defense was relied on, but also to produce some proof of its contention. No more evidence than the plaintiff offered was necessary to make out a *prima facie* case. The inference relied on to displace it was a valuable deliberative aid, but it did not constitute affirmative evidence which the triers of facts were compelled to accept as conclusive.

The judgment of the Court of Appeals is therefore affirmed.