Meyer M. GOLDSMITH,
Plaintiff-Appellee,

v.

Gene ROBERTS, Commissioner, Tennessee Department of Safety,
Defendant-Appellant.

No. 81–60–II.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

July 31, 1981.

Certiorari Denied by Supreme Court,
Oct. 13, 1981.

James A. DeLanis, Asst. Atty. Gen., Nashville, for defendant-appellant.

William P. Redick, Jr., and Lionel R. Barrett, Jr., P. C., Nashville, for plaintiff-appellee.

## OPINION

CONNER, Judge.

(Filed with concurrence of participating judges)

This is an appeal by the Tennessee Department of Safety from an adverse ruling of the chancellor in a forfeiture case.

On September 22, 1979, Officer Charles Park of the Nashville Metropolitan Police Department seized a vehicle belonging to the plaintiff-appellee, Meyer M. Goldsmith,[1] and $873.00 found on his person pursuant to the Drug Control Act, T.C.A. § 52.-1443. The taking resulted from an investigation by Officer Park of an automobile accident at the intersection of West End and Fairfax Avenues in which Goldsmith was an involved party. The vehicle and the money were seized after Officer Park in the course of his investigation found nine quaaludes in the Goldsmith vehicle, and thereafter, the money in Goldsmith's possession. Officer Park determined that the automobile was being used for the transportation of illegal

---

1. Hereinafter the parties will be referred to as in the trial court or by their names, as abbreviated.

drugs for resale and that the confiscated money was the product of a drug transaction.

Goldsmith petitioned the Department of Safety for the return of the property seized, and a hearing on that petition was held November 8, 1979, before a hearing examiner as provided by law. After listening to evidence presented only by the state, through Officer Park, the hearing examiner recommended to the Commissioner of Safety that the forfeiture of the vehicle and the currency be sustained. The Commissioner so held.

Goldsmith brought suit for review of the Commissioner's ruling pursuant to the Uniform Administrative Procedures Act, T.C.A. §§ 4–5–101 et seq., and the chancellor reversed the forfeiture. He ordered the return of the vehicle and the currency to Goldsmith, holding that the Commissioner's order of forfeiture was not supported by substantial and material evidence as required by law.

█ The Department of Safety has appealed the holding of the chancellor averring that there was indeed substantial or material evidence supporting the Commissioner's determination that Goldsmith's automobile was being used for the transportation of illegal drugs for resale and that the $873.00 found in his possession was the product of a drug transaction. All parties agree that the correct test for reviewing the decision of the Commissioner (as well as our review of the chancellor's finding) is whether or nor there was substantial or material evidence to support his decision. *See* T.C.A. § 4–5–117(h)(5); *Humana of Tennessee v. Tennessee Health Facilities Comm'n,* 551 S.W.2d 664, 667–668 (Tenn. 1977). *See also Lettner v. Plummer,* 559 S.W.2d 785 (Tenn. 1977). If so, the action of the Commissioner will be upheld as the courts must be careful not to substitute their judgment for that of the Commissioner. *Ibid.*

What then was the evidence in support of the forfeiture? Only Officer Park testified at hearing. He testified that on September 22, 1979, he was ordered to investigate the accident in which Goldsmith, the occupant of a 1978 Volvo automobile, had been involved. When asked to describe Goldsmith's condition at the scene of the accident, Officer Park testified that he was hardly able to stand without assistance and had a strong smell of alcohol. A blood alcohol test revealed a content of .08. Officer Park did not believe that alcoholic content alone was sufficient to cause the apparent disabilities of Goldsmith. He asserted that based upon his observation of many people under the influence of both drugs and alcohol in his opinion Goldsmith was also under the influence of drugs. Officer Park stated that he found a plastic bag in the Volvo containing nine white tablets later discovered to be methaqualones, commonly known as quaaludes, a schedule two drug.

He testified that Goldsmith was carrying $873.00 cash which was crumbled and loose in the six pockets of his bib overalls, ranging in various currency denominations from $100.00 to $1.00. Additionally, Goldsmith had $18.00 in his billfold.

Officer Park recalled that Goldsmith told him that he was a then unemployed tennis player. He testified that his reasons for concluding that Goldsmith possessed the nine tablets of methaqualone for resale were as follows:

> Mr. Goldsmith's immediate recognition of vice control officers and their repeated recognition of him and his record as I had in my hand at the time, the quantity of money he had in his possession, the manner in which he was carrying it, his lack of any source of employment that was demonstrable and the bag had been handled considerably—clear plastic that had been seized to be clear from excessive handling with a considerable powder residue with a relatively hard—nine (9) relatively hard tablets in it shouldn't leave that much residue within the bag.

The plaintiff offered no proof, contending that the state had failed to carry its burden.

The Department of Safety argues that this evidence is sufficient to sustain the

forfeiture. It contends that an adverse inference will arise from the failure of a party to call an available witness who possesses knowledge essential to that party's cause. The defendant further contends that when a person is in possession of large amounts of money courts "may consider this fact to be proof of the perpetration of a crime ordinarily committed for pecuniary gain." And further, the state contends that since the money was carried in various denominations crumbled in the pockets of Goldsmith's bib overalls this would give rise to a conclusion that the quaaludes were possessed for resale; especially when combined with the fact that Goldsmith was then unemployed.

No criminal offense is more abhorrent to, and potentially as destructive of, our civilization than the illegal sale of a controlled substance. Unauthorized trafficking in drugs has had a disastrous effect on many of this nation's youth and adults. It has been in large part responsible for the marked increase in the numbers of violent crimes in recent years. It cannot and will not be tolerated.

Nonetheless, however unacceptable this conduct may be to a civilized society, we must not ignore the presumption of innocence which attaches in our courts and allow the taking of private property by the the state without sufficient proof of wrongdoing. It must be remembered that a forfeiture proceeding is *quasi criminal* in nature. Forfeitures are not favored in law and statutes that impose forfeitures must be strictly construed. 37 C.J.S. *Forfeitures* §§ 4(b) and 5(e); *Biggs v. State*, 207 Tenn. 603, 341 S.W.2d 737 (1961).

If the state had indeed made out a prima facie case with its proof in chief then it would have been incumbent upon Goldsmith to call available witnesses possessing peculiar knowledge essential to his cause and if not, subject himself to the inference that the testimony would be unfavorable. *See National Life and Accident Insurance Co. v. Eddings*, 188 Tenn. 512, 221 S.W.2d 695, 697 (Tenn. 1949). Though such inference would not itself amount to substantive proof sufficient to serve as a substitute for facts required to be proved by the state to make out its case. *Ibid.* We believe the evidence presented by the state in its case in chief was insufficient to meet the burden of proof placed upon it, so as to allow the inference to arise.

If everyone who carried less than $1,000.00 in cash in denominations from $100.00 down in their pockets in a wadded-up fashion could be inferred to be guilty of some unknown and unreported criminal offense, our jails would be full of honest business and professional people. Likewise, if the fact of unemployment created such a harsh adverse inference, especially in light of the present state of the economy and the high rate of joblessness, the same result would attach. There is no proof as to how Goldsmith came to have $873.00 in his bib overalls, whether he came by it by honest or dishonest means. There is no proof that $873.00 is necessarily an abnormally large amount of money to have in one's possession. In this day and time of rampant inflation a strong argument might be made that it is not.

Finally, to infer possession for resale of nine quaaludes simply because of the above factors combined with evidence of Goldsmith's familiarity with various members of the vice squad, without further explanation of the reason therefor or without introduction of a history of convictions involving the sale of drugs, would be improper. No evidence of a previous drug conviction was offered at the hearing. What evidence that was presented did not speak to the questions of possession of the quaaludes for resale. It did not deal with some substantial, material and basic facts such as where, when and to whom quaaludes had been sold, and in what quantity.

Rather, the proof in this record is arguably contrary to any theory that drugs were being possessed for resale. Officer Park testified that based on his observation Goldsmith was himself under the influence of drugs at the time of the accident and his resulting arrest. Nine quaalude tablets is certainly not a large stockpile and even for

a drug dealer, the living made off of such a quantity would be meager indeed. We believe that the more reasonable conclusion to draw from this evidence, if any could be drawn, would be that Goldsmith obtained some amount of quaaludes for his own use and at the time of his apprehension still retained the nine tablets for that purpose. In a proceeding to forfeit funds under the Drug Control Act, the burden of proof rests upon the state, which must establish by a preponderance of the evidence, or as the more probable conclusion, that the money to be forfeited was received in consideration for or in exchange for a controlled substance. *Lettner v. Plummer, supra.* As was well stated by Judge Todd in another recent case wherein a previous order of forfeiture was reversed:

> There is no substantial evidence that any part of the money seized from appellant was received by him in consideration for or in exchange for a controlled substance. *Indeed there is no evidence that appellant ever sold a controlled substance* or that he was ever convicted of doing so. (Emphasis supplied.) *Hines v. Comm'r of Safety*, Tenn. Ct. App., M.S. filed December 8, 1980.

We are unable to find in this record substantial and material evidence in support of the Commissioner's finding that the state had carried that burden of proof.

This same evidence also offered by the state to prove that the vehicle was being used to transport controlled substances for purposes of resale is no more substantial and material than that proof as it related to the manner of acquisition of the money by Goldsmith.

Accordingly, the judgment of the chancellor is affirmed and this cause is remanded. The costs are taxed to the defendant.

AFFIRMED AND REMANDED.

TODD, P. J., and CANTRELL, J., concur.