IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 26, 2002 Session

**ROBERT FRED JONES, ET AL. v. VICK IDLES**

**Appeal from the Circuit Court for Anderson County**
**No. 98LA0255    William E Lantrip, Chancellor, by Interchange**

**FILED JULY 30, 2002**

**No. E2001-02833-COA-R9-CV**

CHARLES D. SUSANO, JR., dissenting.

I cannot concur in the majority's decision to affirm the trial court's judgment granting the original plaintiff a new trial.

It is clear that the Tennessee Constitution guarantees the right of trial by jury where, as here, a litigant in a tort action seeks unliquidated damages. *See* Tenn. Const. art. I, § 6 ("That the right of trial by jury shall remain inviolate,..."). This means that, if a jury returns a verdict in favor of a party and the trial judge subsequently finds that the verdict is not contrary to the weight of the evidence, and the verdict is otherwise free of reversible legal errors, the successful litigant has a *constitutional right* to that jury verdict. To suggest otherwise is to effectively deny the jury-trial right so clearly set forth in the Tennessee Constitution.

In the instant case, the trial court apparently perceived that it disagreed with the jury's verdict in favor of the defendant on the original claim of the plaintiff. I disagree with this perception. While the trial court would have assigned a lesser degree of fault to the plaintiff than did the jury, *i.e.*, 50% instead of 90%, this does not mean that it *legally* disagreed with the jury's verdict for the defendant on this claim. On the contrary, I believe the trial court *agreed* with the jury verdict for the defendant and that this agreement *required* – as mandated by the constitutional requirement that the right to trial by jury "remain inviolate" – that the trial court deny the plaintiff's request for a new trial.

The concept of the trial court as "the thirteenth juror" has been embedded in our jurisprudence for many years. *Tate v. Gray*, 36 Tenn. 591, 594-95 (1857); *East Tennessee, V. &*

1

*G. Ry. Co. v. Mahoney*, 89 Tenn. 311, 15 S.W. 652, 654 (Tenn. 1890); *Baugh v. Nashville, C. & St. L. Ry. Co.*, 98 Tenn. 119, 38 S.W. 433, 433-34 (Tenn. 1897); *Nashville, C. & St. L. Ry. Co. v. Neely*, 102 Tenn. 700, 52 S.W. 167, 168 (Tenn. 1899); *Chattanooga Electric Ry. Co. v. Finney*, 105 Tenn. 648, 58 S.W. 540, 540-41 (Tenn. 1900). However, interestingly enough, the term "thirteenth juror" seems to have been first verbalized by the Supreme Court in the 1904 case of *Cumberland Telephone & Telegraph Co. v. Smithwick*, 112 Tenn. 463, 79 S.W. 803 (1904):

> The reasons given for the rule are, in substance, that the circuit judge hears the testimony, just as the jury does, sees the witnesses, and observes their demeanor upon the witness stand; that, by his training and experience in the weighing of testimony, and the application of legal rules thereto, he is especially qualified for the correction of any errors into which the jury by inexperience may have fallen, whereby they have failed, in their verdict, to reach the justice and right of the case, under the testimony and the charge of the court; that, in our system, this is one of the functions the circuit judge possesses and should exercise--as it were, that of a thirteenth juror.

*Id.*, 79 S.W. at 804.

The cases addressing the trial court's role as the thirteenth juror have repeatedly focused on the role of the trial court with respect to the jury's *verdict*. The obligation imposed on the trial court is to independently weigh the evidence in order to determine whether, in the judgment of the trial court, the *verdict* is contrary to the weight of the evidence. *Ridings v. Norfolk Southern Ry. Co.*, 894 S.W.2d 281, 288 (Tenn. App. 1994); *State v. Moats,* 906 S.W.2d 431, 433 (Tenn. 1995); *Holden v. Rannick,* 682 S.W.2d 903, 906 (Tenn. 1984); *Grissom v. Metro. Gov. of Nashville*, 817 S.W.2d 679, 683-84 (Tenn. App. 1991); *Sherlin v. Roberson*, 551 S.W.2d 700, 701 (Tenn. App. 1976). *See also* Tenn. R. Civ. P. 59.06 ("If the trial court grants a new trial because the verdict is contrary to the weight of the evidence,..."). If the court determines, as a result of its independent review of the evidence, that the verdict is contrary to the weight of the evidence, it is duty-bound to grant a new trial.[1] If, on the other hand, the court finds that the preponderance of the evidence supports the jury's *verdict*, it is, as previously stated, bound by constitutional mandate to approve the verdict and decree accordingly.

In *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992), the Supreme Court adopted modified comparative fault. The crux of the court's holding is stated thusly:

> We therefore hold that so long as a plaintiff's negligence remains less than the defendant's negligence the plaintiff may recover; in such a

---

[1]The trial court has other options on the issues of additur and remittitur but those issues are not before us in this case.

case, plaintiff's damages are to be reduced in proportion to the percentage of the total negligence attributable to the plaintiff.

*Id*. at 57. By way of an appendix in ***McIntyre***, the Supreme Court set forth a jury charge to be utilized "until...the Tennessee Judicial Conference Committee on Civil Pattern Jury Instructions promulgate[d] new standard jury instructions...." *Id*. at 58. As stated by the Supreme Court, the charge was to include the following:

> If you find from all the evidence that the percentage of negligence attributable to plaintiff was equal to, or greater than, the percentage of negligence attributable to defendant, then you are instructed that plaintiff will not be entitled to recover any damages for his/her injuries.

*Id*. at 59. The said Tennessee Judicial Conference Committee subsequently adopted a jury charge on the subject of comparative fault. As presently constituted, that charge includes the following:

> A party claiming damages will be entitled to damages if that party's fault is less than 50% of the total fault in the case. A party claiming damages who is 50% or more at fault, however, is not entitled to recover any damages whatsoever.

T.P.I. 3 - CIVIL No. 3.50. Therefore, if a claimant is found by the jury and the trial judge to be "50% or more at fault," he or she has failed to establish a right to recover and the jury's verdict denying a recovery should be approved by the lower court.

The focus in the instant case is thus on the jury's *verdict* – as memorialized in the trial court's judgment – finding for the defendant on the plaintiff's original claim. The jury found for the defendant on this claim because it found that the plaintiff was 90% at fault. In other words, the jury found that the plaintiff was "50% or more at fault." It seems to me that it is immaterial whether the trial court found the plaintiff to be 50% at fault, or to be at some higher percentage of fault. This is because the result would have been the same – *the trial court would, in effect, have agreed that the plaintiff could not recover*. Therefore, as far as I am concerned, the trial court, in legal contemplation, has agreed with the jury's *verdict* – in other words, has agreed that the evidence does not preponderate against the jury's determination that the defendant prevails on the plaintiff's claim.

The majority opinion correctly quotes from the opinion authored by me in the case of ***Fye v. Kennedy***, 991 S.W.2d 754 (Tenn. Ct. App. 1998). That opinion, which was recommended for publication by the Supreme Court, in turn correctly quotes from the case of ***Lee v. Melson***, 54 Tenn. App. 53, 387 S.W.2d 838 (1964):

> The guiding principle is fairness to both parties. A verdict tainted with error or confusion ought not to stand. On the other hand, the

3

parties are entitled to only one day in court. Once a party has been accorded a fair trial on the merits, unaffected by errors of law, he is not entitled to another trial merely because another party to the suit has been granted a new trial to reverse an error peculiar to him.

387 S.W.2d at 841. I believe *Lee* remains good law. The plaintiff in the instant case has already had his "one day in court." That day did not go well for the plaintiff, as demonstrated by the jury's finding that he was 90% at fault. Under the circumstances of this case, there is simply no reason to have another trial on the plaintiff's original complaint. Furthermore, and more important, a new trial for the plaintiff on his original claim against the defendant would deprive the defendant of that to which he is constitutionally entitled.

I disagree quite strongly with the majority's finding that there are "complicating issues of comparative fault," quoting from footnote 10 to the *Fye* opinion. *Fye*, 991 S.W.2d at 761 n.10. Contrary to the majority's opinion, the defendant is not seeking a *Fye*-prohibited reallocation of fault. The jury allocated 100% of fault in the first case; and the jury in the new trial will be required to allocate 100% of fault at that trial. I do agree, as the majority asserts, that

> [t]o accept Defendant's position would result in two separate trials with two separate juries with two separate verdicts each allocating fault in the same case to the same parties. Such a procedure would lead to the likely, if not certain, result that the total fault allocated to the parties by the two juries in their two separate verdicts in the same lawsuit would be in excess of 100%.

I see nothing wrong if this be the result. In my judgment, it matters not that the allocation of fault may be different in the two trials or that, when viewed together, the fault in the two trials may exceed 100%. What matters is that 100% of the fault be allocated in each trial. This will happen in the retrial of the defendant's suit against the plaintiff because the trial judge in the subsequent trial is required to see that it happens. It has already happened in the first trial.

I find nothing in *Fye* that compels the majority's decision to grant the plaintiff a new trial on his original complaint. I believe the statement in *Fye*,[2] upon which the majority relies, must be read in the context of the facts in *Fye*, *i.e.*, a single claim by a passenger against the driver of the vehicle in which the passenger was riding as opposed to the facts of the instant case, *i.e.*, competing claims by the drivers of the two vehicles involved in the accident. *See National Life Accident Ins. Co. v. Eddings*, 188 Tenn. 512, 522-23, 221 S.W.2d 695, 699 (1949) (quoting Chief Justice Marshall in *Cohens v. Commonwealth of Virginia*, 19 U.S. (6 Wheat.) 264, 399, 5 L. Ed. 257, 290 ("'It is a maxim not to be disregarded that general expressions, in every opinion are to be taken in connection with the case in which those expressions are.'"). Furthermore, had the trial court denied the original

---

[2]"Under *Turner*, a trial judge, who, in his or her role as the thirteenth juror, cannot approve some part of the jury's determination with respect to comparative fault is limited to granting a new trial." *Fye*, 991 S.W.2d at 762.

plaintiff a new trial, as I believe it should, there would have been nothing in that act that could be construed as a reallocation of fault. *Fye* is simply no authority for the majority's decision in this case.

Comparative fault did not create the possibility of facially inconsistent verdicts where one party is granted a new trial on one claim and another party is denied a new trial on his or her competing claim. Such verdicts could have occurred, and almost certainly did occur, following the adoption of the edict in *Lee* in the days before comparative fault.

I respectfully dissent. I would state further that I believe this issue is a significant one that should be resolved by the Supreme Court. Accordingly, I encourage that court to grant permission to appeal if a Tenn. R. App. P. 11 application is filed.

_____
CHARLES D. SUSANO, JR., JUDGE