IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 22, 2004

## STATE OF TENNESSEE, ET AL. v. JAMIE LYNN BURNETTE, ET AL.

Appeal from the Juvenile Court for Lincoln County
No. J09-01     Charles F. Crawford, Jr., Judge

No. M2003-01742-COA-R3-PT **- Filed May 27, 2004**

This appeal involves the juvenile court's termination of parental rights to two children, A.L.B. (d.o.b. 10/25/96), and B.L.B. (d.o.b. 12/01/98). Appellant argues that the trial court's findings regarding abandonment of the children, persistent conditions, and the children's best interests are unsupported by clear and convincing evidence. We affirm the trial court.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Juvenile Court
Affirmed and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, and FRANK G. CLEMENT, JR., JJ., joined.

John H. Richardson, Jr., Fayetteville, Tennessee, for the appellant, Jamie Lynn Burnette.

Paul G. Summers, Attorney General and Reporter; Melissa Thomas and Juan G. Villasenor Maldonado, for the appellee, Tennessee Department of Children's Services.

### OPINION

This is an appeal from the juvenile court's termination of the appellant's parental rights with regard to two minor children. The Department of Children's Services took custody of the children pursuant to a dependency and neglect petition filed in Lincoln County Juvenile Court in March of 2001. The petition resulted in an Agreed Order entered July 11, 2001, which contained the following pertinent provisions:

> The parties present did enter into an agreement subject to Rule 22 of the TRJP, violation of which, without just cause, is grounds for contempt. The mother of said children, Jamie Burnette, did agree to the finding that the children, [B.L.B.] and [A.L.B.], are Dependent and Neglected children within the meaning of TENN CODE ANN § 37-1-102 in that the mother has pled guilty to a charge of child neglect and that the reason for the charge of child neglect was that the mother did have the

children present at a party at her home where several teenage minors were present, and that drinking of alcoholic beverages and the use of other various illegal substances were allowed during the party by the teenage children and were also used by the mother, which made her unable to properly care for the children at that time.

The first of several parenting plans was drafted in April of 2001. Each of these parenting plans, including those drafted in December of 2002 subsequent to the Petition for Termination, required the appellant to maintain steady employment and a "safe, stable residence of her own" in order to provide for her sons and herself. In October of 2001, an Order of Ninety-Day Trial Home Visit and Divestment was entered containing the following pertinent provisions:

> The parties did enter into an agreement subject to Rule 22 of the TRJP, violation of which, without just cause, is grounds for contempt. The parties did agree to a finding that the mother, Jamie Burnette, has been in complete compliance with the Permanency Plans prepared for the benefit of the children, and that it would be contrary to the welfare of the children to remain in foster care with the State of Tennessee, Department of Children's Services, and that the children, [B.L.B.] and [A.L.B.], should immediately begin a 90-day trial home visit with their mother, Jamie Burnette, and at the conclusion of that trial home visit, said children shall be returned to the custody of their mother, Jamie Burnette, and divested from the custody of the State of Tennessee, Department of Children's Services.

On November 21, 2001, shortly after the entry of this order, the juvenile court entered a Consent Decree Extending Trial Home Visit and Divestment incorporating child protective services' safety plan of November 8, 2001. That plan stated the following:

> B. PRESENTING RISK PROBLEM
> We have reports that Jamie, mother, is drunk, and still doing drugs. Grandmother is not suppose to have [A.] with her, reports have been made that he is always with her. [B.]'s behavior is getting worse again, and Jamie can't control him. Jamie is lacking the parenting skills needed to handle [B.]. Jamie is hanging around with people [who] have criminal records and drug problems. When the children were removed the first time, there were drugs and alcohol found in the home.
>
> . . . .

> D. SERVICE TASKS/RESPONSIBILITIES

| 1. | Complete counseling to address issues of her drug and alcohol abuse. Must have documentation when done. | Counselors | | |
|----|----|----|----|----|

| 2. | Both children are to be in the home at all times. Not at the Grandmother's home. | DCS | | |
|----|-----------------------------------------------------------------------------------|-----|--|--|
| 3. | No men residing in the home. No men spending the night in the home. | DCS, referrents, police reports | | |
| 4. | No alcohol in the home. No drugs in the home. Must have documentation from A/D classes. | Referrents, DCS, police reports | | |
| 5. | History of child neglect, with sever[e] health problems that were untreated prior to foster care. Left children with unre[lia]ble supervision | DCS | | |
| 6. | No acqua[i]ntances/friends that have sever[e] criminal and drug use with violent behavior | DCS, police reports, referrents | | |
| | | | | |

The children were never returned to full custody of the appellant. On March 8, 2002, the juvenile court entered another protective custody order placing the children in the custody of the Department of Children's Services:

> It appears to the Court . . .
>
> [T]hat there is probable cause to believe that the above-named children, are a (sic) dependent and neglected children within the meaning of the law, that the children are subject to an immediate threat to the children's health and safety to the extent that delay for a hearing would be likely to result in severe or irreparable harm, and there is no less drastic alternative to removal available which could reasonably and adequately protect the children's health and safety pending a preliminary hearing; that it is contrary to the children's welfare at this time to remain in the care, custody, or control of the parents/caretakers/custodians, because of the following (*provide specific facts for each child*); on March 4, 2002 both [A.B.] and [B.B.] were found in the residence of their grandmother, at 603 Poplar Ave. in Fayetteville, Tennessee, when 911 personnel responded to the call of a man who had taken an overdose of drugs. Law enforcement found illegal drugs and drug paraphernalia throughout the home, within

reach of the children. Further, the home the children were in had several fire hazards and was excessively filthy creating a health danger [to] the children.

Pursuant to this second removal, new parenting plans were drafted again requiring Appellant to "find and maintain suitable housing and stable employment." Appellant was to have provided proof of residence by September of 2002. The permanency plan was ratified by court order entered April 24, 2002. On May 3, 2002 the court entered an agreed order finding the children dependent and neglected as defined by Tennessee Code Annotated section 37-1-102(b)(12)(G). The parties agreed and the court specifically found:

> [T]hat the children were on March 4, 2002 found in the residence of their grandmother, Lynn Burnette, at 603 Poplar Ave. in Fayetteville, Tennessee, by law enforcement officers and that there were many illegal drugs and drug paraphernalia throughout the home, within reach of the children, further the children were in danger as there were several fire hazards and the home was excessively filthy, creating a health hazard. The children were staying with their grandmother at the time. The parties did agree that the children should remain in foster care with the State of Tennessee, Department of Children's Services until such time as their mother, Jamie Burnette, does substantially comply with the permanency plans prepared for the benefit of the children. The parties did agree that a Review Hearing will be held on June 26, 2002 at 9:00 o'clock A.M. to determine further disposition of the children.

The review hearing was continued to July 10, 2002 at which time the juvenile court entered an order containing the following pertinent language:

> The parties did enter into an agreement, subject to Rule 22 of the TRJP, violations of which without just cause are grounds for contempt. The parties did agree that the Court enter a finding in the matter that the mother, Jamie Burnette, has not completed her A&D assessment or parenting classes or have a home where the children can be accommodated, as required by the permanency plan. Further, that Jamie Burnette did violate her probation in June of 2002 by being positive on a drug screen. Jamie Burnette is currently employed at Tyson's in Shelbyville, Tennessee, and is currently successful at holding this job. The parties did agree that the State of Tennessee, Department of Children's Services is making reasonable efforts to return the children to the home of the mother, but the mother's apparent inability to complete her requirements on the permanency plan require the children to remain in foster care.

Shortly after a second trial home visit began the children were once again returned to the custody of the Department. The order entered September 30, 2002, contains the following findings:

> Upon the sworn Motion of the State of Tennessee, Department of Children's Services, to terminate the trial home visit of [A.B.] and [B.B.] in the home of Jamie

-4-

Burnette, the Court finds that Jamie Burnette has been lying to the Case Manager, Cathy Boles, and stating she was employed at Tyson's when the trial home visit started on September 11, 2002, when she had been fired from Tyson's in August of 2002. Further, Ms. Burnette has moved from the home she rented in Bedford County without reporting the move to the Department and has reportedly stolen most the furniture from the home, which was provided to her by the landlord as part of her rent. The child, [A.], who does attend school, has been tardy four (4) days in the short time he has been with his mother. [A.] does come to school filthy and does have to be bathed by teachers before being allowed to go to class. Jamie Burnette has not given the school a contact number for her, so they can get in touch with her if [A.] is sick or if there is an emergency. Jamie Burnette was to give the Department babysitter or childcare demographic information and has not done so, and the Department has been unable to locate [B.] or Jamie Burnette.

By order entered October 9, 2002, the mother did not contest the termination of the trial home visit. On October 16, 2002, the Department filed its petition to terminate the appellant's parental rights, including the following pertinent allegations:

## VII

The children were removed from the mother, Jamie Burnette, as the result of a Petition filed in Juvenile Court in which the child[ren] have twice been found to be dependent and neglected as defined by T.C.A. 37-1-102 and the children were placed in DCS custody. The Juvenile Court found that the DCS made reasonable efforts to prevent removal of the children or the circumstances of the children's situation prevented reasonable efforts from being made prior to the children's removal. For a period of four (4) months following removal, the DCS has made reasonable efforts to assist the mother, Jamie Burnette to establish a suitable home for the children, but the mother has made no reasonable efforts to provide a suitable home and has demonstrated a lack of concern for the children to such a degree that it appears unlikely that Jamie Burnette will be able to provide a suitable home for the children at an early date. Therefore, Petitioner avers that the Defendant, Jamie Burnette, has abandoned [A.B.] and [B.B.].

## VIII

The children have been removed from the custody of their parents for more than six (6) months.

The conditions which led to the removal of the children from the home of Jamie Burnette still exist and other conditions exist which in all probability would cause the children to be subject to further abuse and/or neglect, making it unlikely that the children could be returned to Jamie Burnette in the near future.

There is little likelihood that these conditions will be remedied at an early date so that the children can be returned to Jamie Burnette in the near future.

The continuation of the parent or guardian and child relationship greatly diminishes the child's chance of an early integration into a stable and permanent home.

This petition was heard before Juvenile Court Judge Charles Crawford on March 26, 2003. The court heard not only from the appellant and her case manager but also from the children's teachers, foster parent, and [A.L.B.]'s father and paternal grandmother. The appellant called only one witness, Kristie Solice, owner of Ruanos Brick and Block, a company for whom the appellant had worked full time for two weeks leading up to the March 26 hearing. The trial court entered its order terminating the appellant's rights on June 18, 2003. The court entered the following findings based upon clear and convincing evidence:

That [B.B.] and [A.B.] were placed in the custody of the Tennessee Department of Children's Services due to dependency and neglect on or about march 18, 2001. These children came into custody on this first occasion because the mother, Jamie Burnette, did throw a party for several underage teenage boys at her home where she either supplied or allowed to be present "crack" cocaine and marijuana and alcoholic beverages for these minors. During this party the mother, Jamie Burnette, was so intoxicated that she was unable to properly care for her children, as it was reported one of the children's diapers was so soaked with urine it was crystallized. The mother, Jamie Burnette was charged and entered a plea of guilty to the criminal charge of child neglect for this incident.

The mother, Jamie Burnette, did work her permanency plan and by Order of this Court, [B.B.] and [A.B.] were placed in their mother's home on an extended visit on August 15, 2001. The Department of Children's Services retained the legal custody of the children. On November 14, 2001, the Court extended the trial home visit, because Jamie Burnette was reportedly still drinking, doing drugs and hanging out with people known to have criminal records and problems with drugs and alcohol. The children were finally released from the custody of the Department and custody returned to Jamie Burnette on January 16, 2002.

Again [B.B.] and [A.B.] were taken into the custody of the State of Tennessee, Department of Children's Services because of dependency and neglect on or about March 4, 2002, only about six weeks after being released from custody back to their mother. On this occasion the children were again found in a home, that of the grandmother, with illegal drugs and drug paraphernalia, which were in these children's reach and the home was so filthy it was a fire and health hazard.

Once again Jamie Burnette worked the permanency plans and the Court allowed the children, [B.B.] and [A.B.], to be placed in the mother's home on a trial home visit on September 11, 2002, with the Department of Children's Services retaining legal custody of the children.

On September 30, 2002, the Court terminated this trial home visit, because the mother had been lying to the Case Manager, Cathy Boles, stating she was employed at Tyson's when the trial home visit stared on September 11, 2002, when

she actually had been fired from Tyson's in August of 2002. Jamie Burnette had moved from the home she rented in Bedford County after the start of this trial home visit without reporting the move to the Department. The oldest child [A.] had been tardy four (4) of the very few days he had been back with his mother and was coming to school filthy.

What is reprehensible to the Court is that when the Department filed the Motion to stop this trial home visit and found the child [A.] and took him back into foster care, the Department could not find Jamie Burnette or the other child, [B.]. The Court had to issue an attachment *pro corpus* for law enforcement to find the child [B.]. It was several days before Jamie Burnette, let the Department know where she was, where the child [B.] was and the Court can hardly believe she waited that long to find out where [A.] was or how he was doing. This total apathy of Jamie Burnette towards her children shows to the Court exactly what kind of parent to these children she is, which is not much by any standard.

The Department has made much more than just reasonable effort to prevent removal of the children from the home of the mother and to return them to her successfully. For a period of four (4) months following removal, and in fact for almost two (2) full years, DCS has made reasonable efforts to assist the mother, Jamie Burnette to establish a suitable home for the children, the Department has helped her find jobs, gotten her rehired after she has been fired from a job, has helped her find suitable housing, has helped find alcohol and drug treatment, has paid some of her bills, has provided parenting classes for her two (2) times, has provided furniture for her and has unquestionably been a good cheerleader to help this mother get her life in order so she can raise and care for these children, in fact Jamie Burnette admitted that she had been begged by her case manager to do the right things and get her life in order, but the mother has made no reasonable efforts to provide a suitable home and has demonstrated a lack of concern for the children to such a degree that it appears unlikely that she will be able to provide a suitable home for the children at an early date, as she has been through some twelve (12) or so jobs in these two (2) years with no good reason for doing so, she has gone to alcohol and drug counseling but has failed at least one (1) drug screen, has lived in at least eight (8) different places in these two (2) years, though the Department helped her get good housing that was affordable, and has moved around for no good reason that the Court can tell, has gone through parenting classes two (2) times, and the Court finds this absolutely unbelievable, that when asked what she had learned in these parenting classes she could not name a single thing. Therefore, the Court finds clearly and convincingly that Jamie Burnette, has abandoned [A.B.] and [B.B.], though she visited with them and went th[r]ough the motions the Department ask[ed] of her, as all she did was go th[r]ough the motions, she has not assumed her role and responsibilities as a parent.

The children have been removed from the custody of their mother for more than six (6) months, in fact about two (2) years. That the conditions which led to the removal of the children from the home of Jamie Burnette still exist and other conditions exist which in all probability would cause the children to be subject to

further abuse and/or neglect, making it unlikely that the children could be returned to Jamie Burnette in the near future, as stated in the findings of this order, further, the Court believes this mother has only put on a show for the Department and the Court to attempt to have her children returned to her. That there is little likelihood that these conditions will be remedied at an early date so that the children can be returned to Jamie Burnette in the near future, as the mother has proven she is dishonest and refuses to be anything but an indifferent parent to these children. The continuation of the mother and children's relationship greatly diminishes the child's chance of an early integration into a stable and permanent home.

Jamie Burnette has never led a stable life and the Court does believe it is incredibly doubtful that she will do so in the near future, as she has had chance after chance to do so with the help of DCS. Jamie Burnette has recently chosen to lie around all day in the floor with her boyfriend at her mother's home, instead of being out working. The court does believe it is relevant that I reflect that the children of Lynn Burnette, who [is] Jamie Burnette's mother, were in custody of the Department at the time Jamie was laying around on the living room floor at her mother's home, and the Court does take notice of this.

Ms. Burnette by her testimony would have liked the Court believe that she has been working for her current employer for a long period of time cleaning up construction sites, but her own witness testified that Ms. Burnette has only worked for her a very short period of time. This Court believes that Ms. Burnette only began working at this job so that she could try to make a good show at this trial to terminate her parental rights.

The trial court heard the following testimony from the appellant's caseworker:

Q.      And since we're here about the persistent conditions of Ms. Burnette, what are the persistent conditions that arose to have her parental rights terminated?
A.      She doesn't have a place to stay. She doesn't have a job. She only works here and there every now and then.
Q.      And why is this situation bad for the children?
A.      Because they need to be able to be in a stable place to be taken care of, a stable home to grow up in, income to pay the bills.
Q.      And does that out-trump her love for the children?
A.      Yes.

In addition to these statements the court also heard the following testimony from Leslie Johnson:

Q.      And Ms. Johnson, where do you work?
A.      At the Center for Family Development in Shelbyville.
Q.      Can you tell the Court a little bit about what that is?

A.      We work with CASA, and we're also Families First, and we do case management.

Q.      Okay. And how do you know Jamie Burnette?

A.      Lynn Burnette, her mother, is my client. I'm her case manager.

Q.      Okay. Have you had occasion to come into contact with Jamie Burnette while visiting Lynn?

Q.      And can you tell the Court how many times you've had contact with Jamie?

A.      On three different occasions I went to Lynn's house to pick her up because she didn't have transportation. When I went there to get her, Jamie was laying on a mattress asleep in the living room floor.

Q.      And that happened on three different occasions?

A.      Right.

Q.      Was somebody on the floor with her?

A.      Yes.

Q.      Who would that be?

A.      It was a male.

Q.      Okay. And do you know the dates of when that happened?

A.      On 2-6, 2-12, and 2-26.

Q.      Do you know what days of the week those were?

A.      Two of the dates are on Wednesday, and I'm not sure about the other day.

Q.      So it would be in the middle of the week then.

A.      Oh, yes.

Q.      During the workweek.

A.      Yes.

Q.      Now, when you went over there to do this, this would be at a time when people would be up and going to work and business hours would be open?

A.      Well, I picked up Lynn to attend a parenting class that was conducted at our center, and it started at 12 noon. I would pick her up prior to 12 noon to get her back to the office to attend the parenting classes.

        The other time was somewhere like 10:30 in the morning when I went to get Lynn. The school of one of her sons called us as a point of contact that her son was sick, and I went to go get Lynn to go pick up her son.

Q.      And Ms. Burnette herself was asleep on a mattress in the middle of the floor with a male.

In order to terminate the parental rights of a parent two findings must be made by the court:

(c) Termination of parental or guardianship rights must be based upon:
        (1) a finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and
        (2) that termination of the parents' or guardians' rights is in the best interest of the child.

Tenn. Code Ann. § 36-1-113(c)(1)(2)(2003 Supp.)

Grounds for termination of parental rights are set forth in Tennessee Code Annotated section 36-1-113(g) providing in pertinent part:

(g) Initiation of termination of parental or guardianship rights may be based upon any of the following grounds:
(1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;
(2) There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4;
(3)(A) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
> (i)  The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
> (ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and
> (iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

Tenn. Code Ann. § 36-1-113(g).

Section 102 provides the following definitions of abandonment:

(1)(A) "Abandonment" means, for purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, that:
> (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child;
> (ii) The child has been removed from the home of the parent(s) or guardian(s) as the result of a petition filed in the juvenile court in which the child was found to be a dependent and neglected child, as defined in § 37-1-102, and the child was placed in the custody of the department or a licensed child-placing agency, that the juvenile court found, or the court where the termination of parental rights petition is filed finds, that the department or a licensed child-placing agency made reasonable

efforts to prevent removal of the child or that the circumstances of the child's situation prevented reasonable efforts from being made prior to the child's removal; and for a period of four (4) months following the removal, the department or agency has made reasonable efforts to assist the parent(s) or guardian(s) to establish a suitable home for the child, but that the parent(s) or guardian(s) have made no reasonable efforts to provide a suitable home and have demonstrated a lack of concern for the child to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date;

. . .

(G) "Abandonment" and "abandonment of an infant" do not have any other definition except that which is set froth in this section, it being the intent of the general assembly to establish the only grounds for abandonment by statutory definition. Specifically, it shall not be required that a parent be shown to have evinced a settled purpose to forego all parental rights and responsibilities in order for a determination of abandonment to be made. Decision of any court to the contrary are hereby legislatively overruled;

Tenn. Code Ann. § 36-1-102.

If any one of the statutory bases for termination of parental rights is established by clear and convincing evidence, such will support an order of termination if it is further found that termination is in the best interest of the child. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn.Ct.App. 2000).

Seeking a determination of exactly what is meant by "clear and convincing evidence" is a rather daunting task in cases that are fact driven as termination cases invariably are. This court recently attempted to describe the clear and convincing evidence standard, explaining that:

> [A]lthough it does not require as much certainty as the "beyond a reasonable doubt" standard, the "clear and convincing evidence" standard is more exacting than the "preponderance of the evidence" standard. *O'Daniel v. Messier*, 905 S.W.2d 182, 188 (Tenn.App. 1995); *Brandon v. Wright*, 838 S.W.2d 532, 536 (Tenn.App. 1992). In order to be clear and convincing,    evidence must eliminate any serious or substantial doubt about the correctness of the conclusions to be drawn from the evidence. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n. 3 (Tenn. 1992); *O'Daniel v. Messier*, 905 S.W.2d at 188. Such evidence should produce in the fact-finder's mind a firm belief or conviction as to the truth of the allegations sought to be established. *O'Daniel v. Messier*, 905 S.W.2d at 188; *Wiltcher v. Bradley*, 708 S.W.2d 407, 411 (Tenn.App. 1985). In contrast to the preponderance of the evidence standard, clear and convincing evidence should demonstrate that the truth of the facts asserted is "highly probable" as opposed to merely "more probable" than not. *Lettner*

> *v. Plummer*, 559 S.W.2d 785, 787 (Tenn. 1977); *Goldsmith v. Roberts*, 622 S.W.2d
> 438, 441 (Tenn.App. 1981); *Brandon v. Wright*, 838 S.W.2d at 536.
> *M.C.G.*, 1999 WL 332729, at \*6 (quoting *Bingham v. Knipp*, No. 02A01-9803-CH-
> 00083, 1999 WL 86985, at \*3 (Tenn.Ct.App. Feb. 23, 1999) (*no perm. app. filed*)).

*In re C.W.W.*, 37 S.W.3d 467, 474 (Tenn.Ct.App. 2000); *see also In re A.D.A.*, 84 S.W.3d 592 (Tenn.Ct.App. 2002).

The trial court terminated the parental rights of Jamie Burnette as to both of her children on grounds of abandonment and failure to remedy persistent conditions that had led to the removal of the children from her home.

The evidence of failure to remedy persistent conditions is so overwhelming that it outweighs all other considerations. As the trial court held, Jamie Burnette has never led a stable life but has followed the example of her mother in subordinating all other considerations to the pursuit of personal pleasure. These children have little chance of ever being integrated into a stable and permanent home as long as these unremedied conditions continue to exist. By clear and convincing evidence, grounds for termination of parental rights have been established.

It is next necessary to consider the evidence to determine if the best interest of the children is served by termination of parental rights. Among the factors to be considered in this determination are:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
>
> . . . .
>
> (7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

Tenn. Code Ann. § 36-1-113(c)(2)(Supp. 2003).

Clear and convincing evidence establishes that Jamie Burnette has failed the test as to factors (1), (2) and (7) of Tennessee Code Annotated section 36-1-113(c)(2) and termination of her parental rights is in the best interest of her children.

The judgment of the trial court is in all respects affirmed and the case is remanded to the trial court for such further proceedings as may be necessary.  Costs are assessed to Appellant.


_____
WILLIAM B. CAIN, JUDGE