IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 7, 2003

**STATE OF TENNESSEE,**
**DEPARTMENT OF CHILDREN'S SERVICES v.**
**DAVID MICHAEL McBEE, SR., ET AL.**

Appeal from the Juvenile Court for Franklin County
Nos. J01-379, J01,380, J00,068     Floyd Don Davis, Judge

No. M2003-01326-COA-R3-PT **- Filed February 9, 2004**

Father appeals the termination of his parental rights as to his two children. The parents are divorced and Mother's parental rights were also terminated; however, she did not appeal. As the trial court made no findings of fact in accordance with Tennessee Code Annotated section 36-1-113(k), we remand this case for a finding of facts by the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Vacated and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, and FRANK G. CLEMENT, JR., JJ., joined.

Mickey Hall, Winchester, Tennessee, for the appellant, David Michael McBee, Sr.

Tammy Brewer, Winchester, Tennessee, Pro Se.

Janet M. Songer, Guardian Ad Litem, Winchester, Tennessee, Pro Se.

Paul G. Summers, Attorney General & Reporter; Juan G. Villasenor, Assistant Attorney General; Dorothy Defore Buck, Winchester, Tennessee, for the appellee, Tennessee Department of Children's Services.

**OPINION**

The parents of the two minor children at issue in this matter are divorced, with Mother having primary residential custody of the children since the divorce, except for their time in DCS custody. The father, David Michael McBee, Sr., Appellant in this matter, maintained a good relationship with the children's mother and exercised liberal visitation with the children.

The two children at issue, M., age 16, and H., age 12 at the time of the termination Order, have a long history with DCS and the foster care system. They were initially placed in foster care in August of 1996 when their mother was incarcerated and Father was unable to take them due to an ongoing divorce from his second wife. These children stayed in foster care for three years before their parents regained custody in August of 1999. After regaining custody, Mother remained primary residential custodian with Father continuing visitation. However, M. had been living with his grandparents while in DCS custody and continued to stay with his grandparents much of the time after his parents regained custody.

The current termination of parental rights on appeal results from the second period of time that the children were placed in DCS custody. In July of 2001, the children were picked up for theft and M. tested positive for drugs. They also admitted to accompanying their mother while she shoplifted. The children were found guilty of theft and declared to be dependent and neglected. They were, once again, placed in DCS custody. H. was placed with a foster care family and M. went back to the custody of his grandparents.

In August of 2001, DCS developed a Permanency Plan for the children that was signed by both parents. At the time this plan was developed, Father informed DCS that he was to be incarcerated. He began serving a prison sentence on October 1, 2001.

With regard to Father, both Permanency Plans provided, under Risks, Needs or Problems: "Father (Michael) will have to show a consistency in his desire to provide for his child." Under Action needed to reduce risk, resolve the problem or address the need: "Michael will consistently visit his child at least twice a month. Michael will provide support for his child. Michael will refrain from alcohol and drugs and illegal activity." Under Desired outcome and expected achievement date: "Michael will not use drugs. Michael will not break the law. Michael will support the best interest of his [son/] daughter." The language in both Permanency Plans was virtually identical.

Beginning October 2001, Father served a prison term of approximately 7 ½ months and was released on parole. However, he was reincarcerated a few months later for ninety days for a parole violation and was released again on November 9, 2002. The petition to terminate his parental rights was filed in July of 2002, approximately one year after the children were placed in DCS custody and a little over two months after Father was released on parole. The termination hearing was begun on January 8, 2003. However, after taking the testimony of Father, the hearing was continued until April 10, 2003 due to Mother's desire to immediately enter a drug treatment facility. At the time the hearing was resumed, Father was again in prison due to another parole violation.

The only testimony given at the hearing was that of the two parents. DCS offered only exhibits including periodic review summarys for the two children; quarterly progress reports; permanency plans; documents entitled Social History for both children (which contained mostly hearsay information and did not provide the name of the drafter nor the purpose of the document);

the disposition of the children's case from General Sessions Court; a clinical assessment of M. McBee performed in July of 2001; some school information for H. McBee; an undated, unsworn statement of a case manager regarding the McBee children; a history and mental status examination dated July 29, 1999 by Patty Marvel, M.D. for M. McBee; a letter from a clinical psychologist regarding H. McBee; the 1996 Petition for Temporary Custody and Protective Custody Orders; the 1996 Affidavit of Reasonable Efforts; psychological information regarding an older sister not a party to the current litigation; Franklin County docket records for both parents regarding arrests, disposition, and time served; and the Juvenile Court Order approving the August 9, 2001 permanency plan. All of these records were admitted in evidence without objection from Defendants.

At the end of testimony, the court stated as follows:

> THE COURT: Alright, it appears to me in this case - I don't like any of these cases. I have a lot of disagreements with the Department of Children's Services and the way things are done, there's no secret about that. But in this particular case, these children have been gone from these parents a significant - one time they got them back. They kept them back for one period of time for two years.
> And it looks to me, or it appears to the Court, that if you have a hard time getting these children back after one episode, that you would do absolutely everything in the world to never have to go through it again.
> And we know, to come up and start another program - and nobody does anything. And Mrs. Brewer gets arrested several times, and is presently arrested. Doesn't do anything until the termination is filed. Ah, the children are out there; she's visited with the children three times.
> Mr. McBee, of course is presently incarcerated, and then I assume he's an indigent. But he has done nothing, other than visited with the children with his parents. And I hate to say, that nobody has done anything to redeem themself or to show any cognizance of anything that's going on, other than go through the motions.
> And if I were coming to court today and trying to get my children back, I'd be up here saying "Judge, I've got a place to live; I've got a job; I've got a place to keep them," and you know, "of my own; I'm trying hard; I've gone to drug rehab; I don't have a drug problem; I haven't been arrested for anything." You know, just on and on and on.

>        . . . .

> THE COURT: And I would put a lot of credence to the argument that your attorney is making ah, giving you both a chance, if these children were two years old or three years old, or a lot younger, where you have a chance. As it stands right now, these children are 13 and 12, and one 15 and the other one is 12. When they're that old, you've already lost them. I mean, they've been a long time gone. And regardless of what you do - and that's true of any parent, not just the two of you.

3

When you get a child, a 14 year-old and one 12, trying to rehabilitate that relationship is extremely . . . yes sir?

MR. McBEE: As far as me doing what DCS required, I would go in there. I've asked for everything I could get. And they gave me, as far as visitation, when I was released last year ah, that's all I could get was visitation. I tried to get other things. I went to ball games with my dad and my son. I mean, that's all I could get.

THE COURT: And the truth of the matter, Mr. McBee?

MR. McBEE: Sir?

THE COURT: You're in much better standing than she is, even though you're sitting here in orange.

MR. McBEE: Thank you, Your Honor.

THE COURT: You know, if it were between you and her, I'd probably give the children to you, even though you're in orange. And find someplace for them to stay five months. Because I really think you'd have a better chance of making it with them than she would.

You know, she's had them, she got them back. She tells me how much trouble she had getting them back.

MR. McBEE: We got them back.

THE COURT: And then she turns around and loses them again.

MS. BREWER: They did not take my children the first time. I had to find a . . .

THE COURT: Oh, I understand that. But I mean if - but when you go to them and you give them to them, and then you get out of prison - and I appreciate that, it's when you're supposed to. But then when you have a hard time getting them back and don't get them back for nine months, and then you'd do anything but take a chance on losing them again. I mean, it kind of shocks the conscience of the Court. And very few things shock the Court anymore.

MR. McBEE: Your Honor, when they was taken from her, I was, at that time, living in Nashville; worked at Nashville Cement. I did - [H.] had to come for ah, stealing a candy bar or something at the store. I didn't know nothing about they was going to take the kids away from her.

Ah, I couldn't understand then why I wasn't brought up for ah, to let me have my kids. I had a good job.

THE COURT: I don't know that either. As I say, if it were between the two of you, I'd give the children to you. You know, I think, based on what you've told me and your actions, even though you're in prison now, or in jail I guess, I think you'd have a better chance of raising them.

MR. McBEE: Well, my red date is July 4th, so . . .

THE COURT: Let me say again then, if the children were two and three years old, I probably wouldn't do what I'm about to do. I'd give both of you a chance. But I think at the age of the children, I don't think, under the best of circumstances, I don't think you'd have a chance.

4

So, I'm going to terminate the parental rights.

The trial court, in its Order of April 16, 2003, then provided the following:

This cause came on to be heard on January 8, 2003 and April 10, 2003, before the Honorable Floyd D. Davis, Judge of the Juvenile Court of Franklin County, Tennessee, upon the sworn petition of the State of Tennessee, Department of Children's Services, with all parties properly before the Court on service of process.

After proof introduced at the hearing, testimony of the witnesses and the entire record, from all of which the Court finds by clear and convincing evidence:

That the petition filed by the State of Tennessee, Department of Children's Services, is well taken and should be sustained and relief granted thereunder for the causes as therein stated in that the subject children [H.N.McBee] and [D.M.McBee] have been in the custody of Petitioner for at least six (6) months; that the conditions which led to said children's removal still persist; that there is little likelihood that said conditions will be remedied at an early date so that the children can be returned to the parents in the near future; that the continuation of the legal parent and child relationship greatly diminishes the children's chances of early integration into a stable and permanent home; that the Defendants have failed to comply in a substantial manner on the reasonable responsibilities of the Permanency Plan; that the parents have demonstrated a wanton disregard for the welfare of the children as to make it possible for the children to be returned home and it is, therefore, for the best interest of the said children and the public that all of the parental rights of the Defendants to the said children be forever terminated and that the full custody, control and guardianship of the said children should now be awarded to the State of Tennessee, Department of Children's Services with the right to place said children for adoption and to consent to any adoption in loco parentis. This decree will have the effect of terminating all the rights, responsibilities, and obligations of the Defendants Tammy Brewer and Michael David McBee, Sr. to the said children and of the said children to the Defendants arising from the parental relationship, and the Defendants are not hereinafter entitled to notice of proceedings for the adoption of said children by another nor have any right to object to such adoption or otherwise to participate in such proceedings, or hereafter, at anytime, to have any relationship, legal or otherwise, with said children.

IT IS, THEREFORE, ORDERED, ADJUDGED and DECREED:

That all of the parental rights of the Defendants Tammy Brewer and David Michael McBee, Sr., to the children [D.M.McBee] and [H.N.McBee], be and the same are hereby forever terminated and the full custody, control and guardianship of the said children be and the same is hereby awarded to the State of Tennessee, Department of Children's Services, appointing the Regional Administrator of Children's Services for Franklin County or his/her successor in office, as the full guardian of [D.M.McBee], and [H.N.McBee], with the right to place the said children for adoption and to consent to such adoption in loco parentis.

5

Father appealed this ruling alleging that grounds for termination [(1) abandonment under Tennessee Code Annotated § 36-1-113(g)(1); (2) substantial non-compliance with the permanency plan under Tennessee Code Annotated § 36-1-113(g)(2); (3) persistence of conditions under Tennessee Code Annotated § 36-1-113(g)(3)], and the best interests of the children were not proven by clear and convincing evidence. Father also claimed that the Permanency Plans were flawed. Mother did not appeal the termination of her parental rights.

In this case, the trial court failed to use the proper standard for terminating Father's parental rights and failed to make the required findings of fact. *See* Tenn.Code Ann. § 36-1-113(k) (Supp. 2003).

> The trial court is required to find only one statutory ground for termination of parental rights. *See* Tenn.Code Ann. § 36-1-113 (2001). However, given the importance of establishing the permanent placement of a child who is the subject of a termination of parental rights proceeding, the trial court should include in its final order findings of fact and conclusions of law with regard to each ground presented. If the trial court addresses each ground that is raised in a termination proceeding, the child's permanent placement will not be unnecessarily delayed due to a remand for findings on alternate grounds. Unfortunately, the trial court made no findings of fact with regard to Mr. Moore's conduct toward Mrs. Bady in the four months immediately preceding D.L.B.'s birth. Consequently, we remand this case to the trial court to consider abandonment under Tennessee Code Annotated section 36-1-102(1)(A)(iii) and all other grounds for termination of parental rights asserted in the Nicklesons' petition.

*In re: D.L.B.*, 118 S.W.3d 360, 367 (Tenn.2003).

The trial court's decision herein seems to be based solely on the advanced age of the children and the judge's belief that the parents have "already lost them." However, no evidence is cited to back up this belief, nor does it represent the proper standard of proof. Further, in its Order, the trial court merely recites conclusion of law generically applied to all parties and both children.

> A trial court's responsibility to make findings of fact and conclusions of law in termination cases differs materially from its responsibility in other civil cases. Generally, trial courts, sitting without juries, are not required to make findings of fact or conclusions of law unless requested in accordance with Tenn. R. Civ. P. 52.01. Termination cases, however, are another matter. Tenn.Code Ann. § 36-1-113(k) explicitly requires trial courts to "enter an order which makes specific findings of fact and conclusions of law" in termination cases. Thus, trial courts must prepare and file written findings of fact and conclusions [of] law with regard to every disposition of a petition to terminate parental rights, whether they have been requested or not.

> Tenn.Code Ann. § 36-1-113(k) reflects the Tennessee General Assembly's

6

recognition of the necessity of individualized decisions in these cases. *In re Swanson*, 2 S.W.3d 180, 188 (Tenn.1999) (holding that termination cases require "individualized decision making"). It also reflects the General Assembly's understanding that findings of fact and conclusions of law facilitate appellate review and promote the just and speedy resolution of appeals. *Bruce v. Bruce*, 801 S.W.2d 102, 104 (Tenn.Ct.App.1990). Because of Tenn.Code Ann. § 36-1-113(k), trial courts cannot follow the customary practice of making oral findings from the bench and later adopting them by reference in their final order.

When a trial court has not complied with Tenn.Code Ann. § 36-1-113(k), we cannot simply review the record de novo and determine for ourselves where the preponderance of the evidence lies as we would in other civil, non-jury cases. In accordance with *In re D.L.B.*, 118 S.W.3d at [367], 2003 WL 22383609, at *6, we must remand the case for the preparation of appropriate written findings of fact and conclusions of law. In this case, the trial court made no specific findings of fact to support its conclusion that Mr. Dalton had not willfully abandoned William Drew Muir. Therefore, we must vacate the December 2, 2002 order and remand the case to the trial court for preparation of the findings of fact and conclusions of law required by Tenn.Code Ann. § 36-1-113(k).

*In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn.Ct.App. 2000).

The trial court must set out its findings of fact that show that at least one ground for termination was proven by clear and convincing evidence.

It should also be remembered that the burden of proof is on the state to prove grounds for termination by clear and convincing evidence. It has long been recognized by the courts in Tennessee that parents have a fundamental right to the care, custody, and control of their children. *See In re Drinnon*, 776 S.W.2d 96, 97 (Tenn.Ct.App.1989). Further, it is in recognition of this fundamental right that courts apply the higher clear and convincing evidence standard of proof for determining if grounds for termination exist.

Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and "severing forever all legal rights and obligations" of the parent. Tenn.Code Ann. § 36-1-113(*l*)(1). Because of its consequences, which affect fundamental constitutional rights, courts apply a higher standard of proof when adjudicating termination cases. *See O'Daniel v. Messier*, 905 S.W.2d 182, 186 (Tenn.Ct.App.1995). To justify the termination of parental rights, the grounds for termination, and the fact that termination is in the best interests of the child, must be established by clear and convincing evidence. *See* Tenn.Code Ann. § 36-1-113(c)(Supp.2000); *State Dep't of Human Servs. v. Defriece*, 937 S.W.2d 954, 960 (Tenn.Ct.App.1996). "This heightened standard serves to prevent the unwarranted termination or interference with the biological parents'

rights to their children." *In re M.W.A.*, 980 S.W.2d 620, 622 (Tenn.Ct.App.1998).

> The "clear and convincing evidence" standard defies precise definition. While it is more exacting than the preponderance of the evidence standard, it does not require such certainty as the beyond a reasonable doubt standard. Clear and convincing evidence eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence. It should produce in the fact-finder's mind a firm belief or conviction with regard to the truth of the allegations sought to be established.

*O'Daniel*, 905 S.W.2d at 188 (citations omitted).

*Brown v. Rogers*, No. M2000-01277-COA-R3-CV, 2001 WL 92083, at *2-3 (Tenn.Ct.App. Feb.5, 2001). The clear and convincing evidence standard is a heightened standard of proof.

> This court recently attempted to describe the clear and convincing evidence standard, explaining that

> > Although it does not require as much certainty as the "beyond a reasonable doubt" standard, the "clear and convincing evidence" standard is more exacting than the "preponderance of the evidence" standard. *O'Daniel v. Messier*, 905 S.W.2d 182, 188 (Tenn.App. 1995); *Brandon v. Wright*, 838 S.W.2d 532, 536 (Tenn.App.1992). In order to be clear and convincing, evidence must eliminate any serious or substantial doubt about the correctness of the conclusions to be drawn from the evidence. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n. 3 (Tenn.1992); *O'Daniel v. Messier*, 905 S.W.2d at 188. Such evidence should produce in the fact-finder's mind a firm belief or conviction as to the truth of the allegations sought to be established. *O'Daniel v. Messier*, 905 S.W.2d at 188; *Wiltcher v. Bradley*, 708 S.W.2d 407, 411 (Tenn.App.1985). In contrast to the preponderance of the evidence standard, clear and convincing evidence should demonstrate that the truth of the fact asserted is "highly probable" as opposed to merely "more probable" than not. *Lettner v. Plummer*, 559 S.W.2d 785, 787 (Tenn.1977); *Goldsmith v. Roberts*, 622 S.W.2d 438, 441 (Tenn.App.1981); *Brandon v. Wright*, 838 S.W.2d at 536.

> *Bingham v. Knipp*, No. 02A01-9803-CH-00083, 1999 WL 86985, at *3 (Tenn.App. Feb.23,1999).

*In re M.C.G.*, No. 01A01-9809-JV-00461, 1999 WL 332729, at *6 (Tenn.Ct.App. May 26,1999).

This clear and convincing evidence standard applies to the limited number of statutorily

defined circumstances for which parental rights may be terminated. *See In re T.S. and M.S.*, No. M1999-01286-COA-R3-CV, 2000 WL 964775, at *4 (Tenn.Ct.App. July 13,2000). The juvenile court found two grounds for terminating Father's parental rights under Tennessee Code Annotated section 36-1-113(g) (2) & (3). The relevant statutory provisions regarding these grounds for terminating parental rights provide as follows:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the following grounds:
>
> . . . .
>
> (2) There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4;
>
> (3)(A) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
>> (i) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
>> (ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future;
>> (iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

Tenn.Code Ann. § 36-1-113(g)(1-3)(Supp.2003).

The juvenile court also found that it was in the best interest of the children that the parental rights be terminated. However, the juvenile court failed to make any specific finding of fact regarding the best interest of the children either. *See* Tenn.Code Ann. § 36-1-113(k)(Supp.2003).

It should be noted that Father and Mother were divorced and in very different circumstances at the time that the children were taken into DCS' custody. Likewise, the situation of the two children differs enormously, with M. being close to legal age and living with his Father's parents and H. being a few years younger living with a foster family. As such, each of the grounds for termination, as well as the best interest of each child, should be dealt with individually.

This cause is remanded to the juvenile court for a finding of facts in accordance with section 3-1-113(k) of the Code and this Opinion.

9

_____
WILLIAM B. CAIN, JUDGE