TRAVERS *v.* ABBEY.

(*Jackson.* May 30, 1900.)

1. JURISDICTION. *Of ecclesiastical matters.*

The civil courts have no jurisdiction of ecclesiastical controversies involving no property rights—*e. g.*, removal of the pastor of a church and appointment of his successor, under color of ecclesiastical authority—and the tribunals of the church have exclusive authority, without interference of the civil courts, to determine finally all such controversies. (*Post, p. 668.*)

Cases cited: Nance *v.* Busby, 91 Tenn., 330.

2. SAME. *Same.*

The pastor of a church has ordinarily no such property right in his salary as entitles him to appeal to the civil courts to prevent his removal and his substitution by another pastor under ecclesiastical authority. (*Post, p. 669.*)

3. SAME. *Defense of want of, made by answer.*

Want of jurisdiction of a Chancery Court over the subject-matter of a purely ecclesiastical controversy may be effectively relied upon by answer. (*Post, p. 668.*)

Cases cited: Galyon *v.* Gilmore, 93 Tenn., 677; Agee *v.* Dement, 1 Hum., 332; Dixon *v.* Caruthers, 9 Yer., 30; Dean *v.* Snelling, 2 Heis., 484.


FROM SHELBY.


Appeal from the Chancery Court of Shelby County. JNO. L. T. SNEED, Ch.

C. W. HEISKELL for Travers.

B. W. HIRSCH for Abbey.

WILKES, J. Prior to the institution of this suit Matthew W. Travers had been appointed, by the Bishop and Conference of the African Methodist Episcopal Church, pastor of the DeSoto Street church of that denomination, known as Avery Chapel, in the city of Memphis. Jno. W. Abbey was the Presiding Elder of the district in which Avery Chapel is located. He removed Reverend Travers from the pastorate of Avery Chapel and transferred him to another church in the same district, and placed Reverend Beckham in his place and stead in charge of Avery Chapel. It is alleged also that the Presiding Elder ignored the regularly appointed stewards, against the consent of the congregation and to the scandal of religion. The bill was filed by the deposed pastor and old Board of Stewards against the newly installed pastor and Board, and charged that the latter will on the morrow (presumably the Sabbath) take charge of the church and conduct its services, and exclude complainants from the discharge of their official functions.

The prayer of the bill is that defendants be enjoined from interfering with complainants in the discharge of their ecclesiastical duties as pastor and stewards, or closing the church upon them, or interfering with them in the discharge of their

duties or with their services, and for general relief.

There was an answer by the defendants, in which they admit the original appointment of Travers as pastor, but insist that he has been removed by proper disciplinary proceeding. They neither admit nor deny that the complainants named as stewards are such, but disclaim any intention to interfere with their official functions. They deny that the Presiding Elder removed the pastor without authority, but insist that he was regularly removed in the mode pointed out by the Discipline of the church, by the consent and advice of the Bishop. They admit that Reverend Beckham has been appointed pastor instead of Reverend Travers, and that he will proceed to exercise the duties and functions of pastor, and they insist that this is in strict accord with the Discipline of the church. They disclaim any purpose of excluding defendant stewards from the church, or their functions as officers, so long as they are authorized by the law of the church to act as such.

The answer then proceeds to state the manner in which Reverend Travers was deposed from the pastorate, and alleges that it was in strict conformity to the Discipline of the church, which is made part of the answer; and likewise as to supplying his place by Reverend Beckham, after consultation with and approval by the Bishop in letters and telegrams which are set out.

The answer then says that the controversy is purely an ecclesiastical one, and not involving any legal or property rights, and it is asked that the bill be dismissed and suit discontinued.

Proof was taken, and on final hearing the Court dismissed the bill, and complainants appealed.

We have examined the matters of controversy in the case, and they are such as are purely disciplinary and relate to the ecclesiastical constitution and government of the church and the exercise of its internal affairs and the administration of discipline, and do not, in our opinion, involve any questions of property or personal rights.

The civil courts will not review the decisions or proceedings of ecclesiastical judicatures in matters properly within their province under the constitution, laws, or regulations of the church. *Nance* v. *Busby,* 7 Pickle, 330.

There was no waiver of jurisdiction in this case by answering and setting up defense in the answer, as the want of jurisdiction was of the subject-matter of litigation, and not of the persons of the defendants. And the objection could be raised at any time, and is fatal whenever presented. Enc. Pleading and Practice, Vol. 12, 186; *Galyon* v. *Gilmore,* 9 Pickle, 677; *Agee* v. *Dement,* 1 Hum., 332; *Dixon* v. *Caruthers,* 9 Yer., 30; *Dean* v. *Snelling,* 2 Heis., 484.

It may be the disciplinary proceeding in this case is an arbitrary one; of that the members of

Travers *v.* Abbey.

the church must judge, and the Courts cannot. It may be the proceedings were irregularly conducted, measured by the disciplinary standard; that is a question for the ecclesiastical or church revising authority, and not for the Courts.

The pastor has no property right in his salary as against the church. That is a matter of voluntary contribution by the membership, except so far as individuals may bind themselves therefor. The pastor is not an employee of the church. Pecuniary considerations are not controlling in such relations. The pastor is actuated by a higher motive than the salary he receives. He may secure this as a matter of contract with members of his congregation or others, and when such contract exists, it may be enforced in the Courts; but when the pastor relies simply on the duty of his church to support him, if he seeks redress, he must find it at the hands of the church. *Baxter* v. *Mc-Donell,* 40 L. R. A., 675; *Twigg* v. *Sheehan,* 47 Am. Rep., 727.

The removal of Travers having been made under authority of the church discipline, the Courts will not inquire into its regularity or validity.

There is no error in the action of the Court below, and the decree of that Court is affirmed, with costs.