IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 12, 2015 Session

## DYANNA WILSON v. CITY OF MEMPHIS

**Appeal from the Chancery Court for Shelby County**
**No. CH1209363      Kenny W. Armstrong, Chancellor**

_____

**No. W2014-01822-COA-R3-CV – Filed July 13, 2015**
_____

This appeal results from the trial court's order reversing the City of Memphis Civil Service Commission's decision to terminate the employment of one of its employees. We vacate the judgment of the trial court and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the Court, in which Arnold B. Goldin, J., and Brandon O. Gibson, J., joined.

Herman Morris, Jr. and Barbaralette G. Davis, Memphis, Tennessee, for the appellant, City of Memphis.

Darrell J. O'Neal Memphis, Tennessee, for the appellee, Dyanna Wilson.

**OPINION**

**Background**

Plaintiff/Appellee Dyanna Wilson was hired by the City of Memphis ("the City") as an equipment operator in 2006. Ms. Wilson's job description required her to work under the supervision of a supervisor and perform various outdoor work. This case involves several

incidents of misconduct on the part of Ms. Wilson that resulted in the termination of her employment.

Specifically, on February 27, 2009, Ms. Wilson was issued a Notice of Fact Finding Hearing related to charges that Ms. Wilson failed to comply with direct orders of the foreman, shift supervisor, and supervisor on three separate occasions. The first notice stated that Ms. Wilson was being charged with violations of the City of Memphis, Division of Public Works Rules ("Public Works Rules"),[1] the City of Memphis Personnel Manual ("Personnel Manual"),[2] and a Memorandum of Understanding between the City of Memphis and the union representing City employees ("Memorandum of Understanding").[3] Service of the February 27, 2009 notice was attempted by certified mail, but was returned unclaimed. A second notice concerning the same charges was issued on March 17, 2009. A copy of this notice was also returned unclaimed.[4]

---

[1] Specifically, Ms. Wilson was charged with violating Public Work Rule Article 2, Conduct at Work, Section 2.02 Compliance of Orders, which states:

> Employees shall comply with all orders of supervisors and other approved authorities. Employees shall perform all orders requested and directed in a prompt and efficient manner. Employees shall not verbally abuse supervisors because of orders given, nor unreasonably question or fail to perform work as requested.

[2] Specifically, Ms. Wilson was charged with violating Personnel Manual Section 38-02, which provides in pertinent part:

> 2. The employee has violated a lawful or official regulation or order, or refused to accept an assignment from an authorized supervisor and the failure to obey amounts to insubordination.

> *   *   *

> 4. The employee's conduct and/or behavior toward citizens, public charges, vendors, contractors, management personnel, fellow employees, etc., has been offensive, inappropriate, and fails to maintain satisfactory and harmonious relationships.

The Personnel Manual further indicated that "[d]isciplinary action may be taken" for the above infractions.

[3] The Memorandum of Understanding indicated that "[g]ross insubordination" would constitute a major infraction.

[4] There is no dispute on appeal that Ms. Wilson received adequate notice of the hearing.

A fact finding hearing occurred on March 27, 2009. Ms. Wilson was present at the hearing and given an opportunity to respond to charges that she had committed several instances of inappropriate workplace conduct between February 5, 2009, and February 17, 2009. These instances involved: 1) a February 5, 2009 incident where Ms. Wilson refused to put on her work boots and help with the excavation of a hole, despite repeated direct orders from the job foreman; 2) a February 12, 2009 incident where Ms. Wilson refused a direct order from a supervisor to move a tandem truck to allow school traffic to proceed, indicating that she would only take orders from the foreman; and 3) a February 17, 2009 incident where Ms. Wilson refused to attend a meeting intended to provide Ms. Wilson with a notice of fact finding hearing for prior alleged disciplinary violations.

On April 9, 2009, a notice of decision was rendered finding that the allegations against Ms. Wilson were sustained. Specifically, management determined that Ms. Wilson "consistently exhibited behavior that is non-cooperative and combative towards management." Accordingly, Ms. Wilson was found to have violated the applicable Public Works Rules, the Personnel Manual, and the Memorandum of Understanding. With regard to the Public Works Rules and the Personnel Manual, Ms. Wilson received an oral reprimand for the first incident, a written reprimand for the second incident, and a one day suspension for the third incident. With regard to the Memorandum of Understanding, Ms. Wilson received a one day suspension for the first incident, a five day suspension for the second incident, and a ten day suspension for the third incident. Accordingly, Ms. Wilson was to serve nineteen days of suspension. Ms. Wilson was also ordered to participate in the City's Employee Assistance Program within seven days, pursuant to the Personnel Manual. The letter further indicated that "[a]ny future incidents of this nature will result in more severe disciplinary action up to and including termination of employment with the City[.]"

A second disciplinary action resulted, in part, from Ms. Wilson's alleged refusal to cooperate during the first disciplinary action. Specifically, a third Notice of Fact Finding Hearing was issued on April 9, 2009 concerning alleged misconduct between February 27, 2009, and April 6, 2009. A fact-finding hearing occurred on May 8, 2009. Ultimately, this disciplinary action involved four separate incidents of alleged insubordination by Ms. Wilson: (1) a February 27, 2009 incident wherein Ms. Wilson refused to accept a Notice of Fact Finding hearing concerning the prior allegations, despite direct orders to do so; (2) a March 29, 2009 incident wherein Ms. Wilson again refused direct orders to accept the Notice of Fact Finding Hearing; (3) an April 6, 2009 incident wherein Ms. Wilson refused a direct order to push and unload dirt from a truck; and (4) the fact that Ms. Wilson refused to participate in the City's Employee Assistance Program, despite being ordered to do so in the April 9, 2009 decision letter.

3

The charges relating to all four incidents were sustained by decision letter dated May 15, 2009. For her violations of the Public Works Rules and Personnel Manual, Ms. Wilson received five days of suspension for the first incident, ten days of suspension for the second incident, fifteen days of suspension for the third incident, and thirty days of suspension for the final incident. For her violation of the Memorandum of Understanding, Ms. Wilson received fifteen days of suspension for the first incident, thirty days suspension for the second incident, and termination effective immediately for the third and fourth incidents.

Ms. Wilson filed timely appeals of both disciplinary actions to the City of Memphis Civil Service Commission ("the Commission"), which appeals were later consolidated. A hearing was held on Ms. Wilson's appeal to the Commission on February 10, 2012, and March 23, 2012.[5] Ms. Wilson was present and testified, as did several of Ms. Wilson's superiors. Ms. Wilson admitted that she "routinely refused to do what was asked of [her] by [her] superiors." However, Ms. Wilson indicated that she refused orders only when the orders were "not right." The Commission issued a decision on May 16, 2012, containing detailed findings of fact and conclusions of law. In its decision, the Commission found that the termination of Ms. Wilson's employment was reasonable under the circumstances and was supported by a preponderance of the evidence. The Commission further found that the allegations regarding Ms. Wilson's repeated refusal to comply with direct orders were substantiated by the evidence and "constitute 'gross misconduct' on the part of Ms. Wilson," citing the Public Works Rules, the Personnel Manual, and the Memorandum of Understanding. Accordingly, the Commission found that there was just cause to terminate Ms. Wilson's employment.

Ms. Wilson filed a petition for a writ of certiorari regarding the Commission's decision on June 5, 2012, in the Shelby County Chancery Court. Ms. Wilson sought back-pay, reinstatement, and attorney's fees and costs. On May 14, 2013, the trial court remanded the matter back to the Commission to clarify whether its decision was based upon the Memorandum of Understanding, which the trial court ruled was non-binding, or the City's Personnel Manual, which the trial court ruled was an appropriate basis for discipline. Specifically, the court's order states:

> 1. The City [] cannot rely on the terms of any Memorandum of Understanding . . . as grounds to suspend, terminate or to take other disciplinary actions because Tennessee case law

---

[5] There is no explanation in the record for the substantial delay between the decision letter terminating Ms. Wilson's employment and the hearing before the Commission.

4

establishes that collectively bargained memoranda or contracts are nonbinding and unenforceable;

2. If the Commission based its decision upholding [Ms. Wilson's] termination on the binding nature of the Memorandum of Understanding to do so was error;

3. Upon remand of the case the Civil Service Commission is to clarify whether or not its decision to uphold termination of Petitioner's employment was based on the City's Personnel Manual only, without consideration of the Memorandum of Understanding, which is not enforceable against [Ms. Wilson] under Tennessee law;

4. The Court finds that without consideration of the Memorandum of Understanding as a basis for discipline, the notice of disciplinary action provided to Petitioner at most supports suspension, not termination, based on the City of Memphis Personnel Policies and Departmental Work Rules;

5. Finally, the Civil Service Commission's decision is not supported by the record to the extent it makes findings that are inconsistent with the notice of disciplinary action provided to Petitioner by the City of Memphis on May 15, 2009, disregarding the provisions of the Memorandum of Understanding referred to in the Commission's decision.

6. All other issues raised are reserved pending remand of this matter.

The Commission entered a supplemental order on August 16, 2013, clarifying that its decision was solely based upon the City's Personnel Manual and Public Works Rules. Specifically, the supplemental order stated:

The Commission has reviewed the record of its proceedings, pursuant to the Court's direction, and hereby confirms that its May 16, 2012 ruling was based upon the City's Personnel Policies and DPW work rules, and was not based upon alleged violation of the [Memorandum of Understanding]. The fact that the [Memorandum of Understanding] acknowledged that "Gross Insubordination" constituted a "Major Infraction" for purposes of job discipline was coincidental to the fact that Ms. Wilson's repeated refusals to comply with direct orders from her DPW supervisor constituted serious "insubordination" and failure "to maintain satisfactory

5

work relationships", as set forth in [Personnel Manual] 38.02 (2) & (4) of the City's personnel policies (Ex. 16), and also constituted failure "to comply with all orders of supervisors" and failure "to perform work as requested", as set for in [Public] Work[s] Rules 2.02[.]

The trial court, however, was not satisfied with the Commission's supplemental order, as it "failed to show an objective review of the record" and failed to comply with the City's Charter, which required that the decision be rendered by a chairman and two commissioners. Accordingly, the trial court again remanded the matter back to the Commission. The Commission entered a second supplemental order on July 28, 2014, noting that while the initial order was entered by a three-member panel, one commissioner had retired at the time that they were required to render the supplemental order. The Commission further noted that given the Commission's and Chancery Court's prior rulings, the issues appeared moot, as the trial court had previously ruled that the Personnel Manual supported only suspension rather than termination.

Upon consideration of the second supplemental order, on August 11, 2014, the trial court entered an order finding that the Commission: (1) erred in determining that the Memorandum of Understanding was a proper basis for imposing discipline, despite the fact that the Commission's supplemental order indicated that its decision did not rely on the Memorandum of Understanding; and (2) erred in imposing termination because excluding consideration of the Memorandum of Understanding, the notice of disciplinary action provided by the City with regard to both disciplinary actions supported suspension only, rather than termination. The order further ordered reinstatement of Ms. Wilson, with back pay and benefits. On September 18, 2014, the City filed a motion requesting a stay of execution on the trial court's judgment pending appeal. Finally, on November, 20, 2014, the trial court entered an order denying Ms. Wilson's request for attorney's fees and sanctions and granting the City's request for a stay of execution on the trial court's judgment.[6] From these orders, the City appeals.

**Issues Presented**

The City raises two issues, which are taken from its brief:

1. Whether the trial court erred in reversing the decision of the Civil Service Commission which determined by a

---

[6] At the time the November 20, 2014 order was entered, Chancellor Kenny Armstrong, the trial judge who presided over the chancery court case, had been appointed to the Tennessee Court of Appeals. Accordingly, Chancellor Walter Evans, sitting by interchange, entered the November 20, 2014 order.

preponderance of the evidence that just cause existed to support the action of the City of Memphis in discharging Ms. Wilson.
2. Whether the process provided to Ms. Wilson was adequate.

In the posture of Appellee, Ms. Wilson raises three issues, which are also taken from her brief:

1. Whether the City timely appealed the court's May 14, 2013 order stating that the Memorandum of Understanding is an unenforceable contract.
2. Whether the City timely appealed the court's December 18, 2013 order stating that the Commission violated the Memphis City Charter.
3. Whether the trial court correctly determined that in light of the Commission's July 28, 2014 decision that the Commission ruling was moot, and if enforcement was the proper remedy.

## Discussion

### I.

Because her argument involves this Court's subject matter jurisdiction, we begin with Ms. Wilson's argument that the May 14, 2013, and December 18, 2013 orders by the trial court were final orders from which an appeal lied. According to Ms. Wilson, because the City failed to file a notice of appeal within thirty days of the entry of these orders, this Court has no subject matter jurisdiction to consider any argument that the trial court erred in its decisions.

"Subject matter jurisdiction is the basis for the court's authority to act and cannot be waived." *First Tenn. Bank Nat'l Ass'n v. White*, No. 03A01-9711-CV-00514, 1998 WL 518303 (Tenn. Ct. App. Aug. 20, 1998) (citing *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994)). Likewise, a lack of jurisdiction over the subject matter of a controversy cannot be conferred upon the court by the consent of the parties. *Cnty. of Shelby v. City of Memphis*, 211 Tenn. 410, 365 S.W.2d 291, 292 (Tenn. 1963); *Baker v. Mitchell*, 105 Tenn. 610, 59 S.W. 137, 138 (Tenn. 1900); *Gillespie v. State*, 619 S.W.2d 128, 129 (Tenn. Ct. App. 1981); *Tritschler v. Cartwright*, 46 Tenn. App. 662, 333 S.W.2d 6, 8 (Tenn. Ct. App. 1959). Lack of subject matter jurisdiction may be raised at any time by the parties to the action or by the appellate court *sua sponte* on appeal. *See* Tenn. R. Civ. P. 12.08 (2005) (stating that "whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action"); *County of Shelby*, 365

7

S.W.2d at 291 (noting the duty of the appellate courts to *sua sponte* consider the issue of the trial court's subject matter jurisdiction); ***Travers v. Abbey***, 104 Tenn. 665, 58 S.W. 247, 248 (Tenn. 1900) (stating that the subject matter jurisdiction of the trial court "could be raised at any time, and is fatal whenever presented"); ***Scales v. Winston***, 760 S.W.2d 952, 953 (Tenn. Ct. App. 1988) ("The issue of subject-matter jurisdiction can be raised in any court at any time."); ***Reynolds v. Hamilton***, 18 Tenn. App. 380, 77 S.W.2d 986, 988 (Tenn. Ct. App. 1934) ("Where the court has no jurisdiction of the subject-matter, the question may be raised at any time, by either the parties or the court.").

The filing of a timely notice of appeal to this Court is jurisdictional. ***First Nat'l Bank v. Goss***, 912 S.W.2d 147, 148 (Tenn. Ct. App. 1995). As this Court explained:

> The date of entry of a final judgment in a civil case triggers the commencement of the thirty-day period in which a party aggrieved by the final judgment must file either a post-trial motion or a notice of an appeal. *See* Tenn. R. Civ. P. 59.02; Tenn. R. App. P. 4(a)–(b). If timely, certain post-trial motions, such as [a] motion to alter or amend, will toll commencement of the thirty-day period for filing a notice of appeal until the trial court enters an order granting or denying the motion. Tenn. R. App. P. 4(b); *see* ***Binkley v. Medling***, 117 S.W.3d 252, 255 (Tenn. 2003). If a post-trial motion is not timely, the trial court lacks jurisdiction to rule on the motion. *See* ***Binkley***, 117 S.W.3d at 255. Similarly, if the notice of appeal is untimely, the Court of Appeals lacks subject matter jurisdiction over the appeal. ***Id.***; *see also* Tenn. R. App. P. 2 (stating that appellate courts may not suspend the thirty-day time period for filing a notice of appeal).

***Ball v. McDowell***, 288 S.W.3d 833, 836 (Tenn. 2009) (footnotes omitted). In order to determine if the thirty-day window for filing a notice of appeal is triggered, however, the judgment appealed from must be a final judgment. An order that fails to adjudicate all of the parties' claims does not trigger the commencement of the thirty-day period in which an aggrieved party must file a notice of appeal. ***Id.*** Instead, "if multiple parties or multiple claims for relief are involved in an action, any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all parties." Tenn. R. App. P. 3(a).

8

To support her argument, Ms. Wilson relies on this Court's Opinion in *City of Memphis v. Lesley*, No. W2012-01962-COA-R3CV, 2013 WL 5532732 (Tenn. Ct. App. Oct. 7, 2013). In *Lesley*, the Commission ruled that the plaintiff was "still within her one-year probationary period of employment when she was terminated, and therefore, she was not entitled to a civil service hearing." *Id.* at *9. Plaintiff filed a petition for judicial review in the chancery court. According to the Court of Appeals, the only issue was whether plaintiff was a probationary employee. Therein, the chancery court reversed the ruling of the Commission and remanded for a hearing on the termination of plaintiff's employment. Because the order of the chancery court "conclusively determined all issues before the [c]hancery [c]ourt on their merits and left nothing for further judgment of that court," the Court of Appeals determined that the issue of plaintiff's probationary status was a final order at the time it was entered by the trial court. Because the Commission delayed appealing that decision until after an unfavorable decision from the Commission on remand (well beyond thirty days after the entry of the judgment), the Court ruled that it lacked subject matter jurisdiction to consider that issue. *Id.* at *9–*10.

The facts presented in *Lesley* are extremely unique and its holding should be narrowly applied. Indeed, its holding only applies when the chancery court's judgment "conclusively determine[s] all issues before the [c]hancery [c]ourt on their merits and le[aves] nothing for further judgment of that court." *Id.* at *9. Only then does the order of the chancery court, or any court, become final and appealable. *See* Tenn. R. App. P. 3(a). From our careful review of the facts in this case, the situation presented in *Lesley* is not present here. Instead, both the May 14, 2013, and December 18, 2013 orders left matters unresolved in the chancery court, and therefore, do not constitute final judgments.

In this case, the May 14, 2013 order is clearly not final. First, the trial court undoubtedly intends to retain jurisdiction, evidenced by the fact that it gives the Commission a specific time frame for carrying out the trial court's directives. More importantly, the May 14, 2013 order specifically states that "[a]ll other issues raised are reserved pending remand of this matter." Accordingly, the May 14, 2013 order does not resolve all the claims of the parties and cannot constitute a final judgment from which an appeal will lie. *See* Tenn. R. App. P. 3(a). Instead, the order was interlocutory in nature, and other proceedings and orders were required to create a final judgment.

Although the December 18, 2013 order does not contain as clear an indication of the trial court's intent to reserve certain issues for later consideration, we likewise conclude that it did not constitute a final judgment. First, much like with the May 14, 2013 order, the trial court clearly directs the Commission to respond to its ruling within a specific timeframe. Furthermore, this order simply cannot constitute a final order on Ms. Wilson's petition for a writ of certiorari because it fails to rule on her requested relief, an award of reinstatement with full back pay and benefits, as well as attorney's fees. Without ruling on Ms. Wilson's

request, the trial court had not yet ruled on "all the claims, rights, and liabilities of all the parties." *See* Tenn. R. App. P. 3(a). Instead, the trial court's ruling was not final until the trial court entered two additional orders: the August 11, 2014 order awarding Ms. Wilson reinstatement, back pay, and benefits; and the November 20, 2014 order denying Ms. Wilson's request for attorney's fees and other pending requests for relief.

Based on our holding that the May 14, 2013, and December 18, 2013 orders were not final and appealable, we also find no merit in Ms. Wilson's contention that the City was required to file its own petition for a writ of certiorari of the Commission's July 28, 2014 order indicating that the issues remanded to the Commission were moot. Clearly, this order was part of the ongoing chancery court action. If Ms. Wilson's argument were correct, the litigation would have been concluded by the Commission's July 28, 2014 order. The trial court, therefore, would have lacked jurisdiction to award Ms. Wilson reinstatement, back pay, and benefits. Clearly, Ms. Wilson does not intend this result. Accordingly, the City was not required to file a separate writ of certiorari to contest the Commission's July 28, 2014 order. Instead, the chancery court proceeding was ongoing at that time. Additionally, because the City filed a timely notice of appeal of the chancery court's final order, this Court properly has jurisdiction to consider whether the chancery court erred in reversing the decision of the Commission, including all interlocutory orders that were entered prior to that final order. *See generally* **Joslyn v. Sappington**, 1 Tenn. 222, 223 (Tenn. Super. L. & Eq. 1806) (holding that an appeal lies only from a final judgment after which the appellate court will review all interlocutory proceedings); *see also* 5 C.J.S. *Appeal and Error* § 855 ("[A]n interlocutory decision, order, or ruling [that] is not itself independently appealable may be reviewed on appeal from a final judgment or decree.").

## II.

The City next argues that the trial court erred in substituting its judgment for that of the Commission. As previously discussed, the Commission determined that the preponderance of the evidence supported the termination of Ms. Wilson's employment due to her violations of various rules concerning conduct. The Commission's decision is reviewed pursuant to Tennessee Code Annotated Section 4-5-322, which provides, in pertinent part:

> (a)(1) A person who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter, which shall be the only available method of judicial review. . . .
>
> * * *
>
> (h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been

10

prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.

> (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

(i) No agency decision pursuant to a hearing in a contested case shall be reversed, remanded or modified by the reviewing court unless for errors that affect the merits of such decision.

The standard contained in Tennessee Code Annotated Section 4-5-322 was explained by this Court in *City of Memphis v. Civil Serv. Comm'n of City of Memphis*, 238 S.W.3d 238 (Tenn. Ct. App. 2007):

> Upon confirming that an agency has employed the proper legal principles in the case under review, this Court must then consider the disputed factual findings and address whether the agency had a reasonably sound basis for making those findings. *See McEwen v. Tenn. Dept. of Safety*, 173 S.W.3d 815, 820 (Tenn. Ct. App. 2005). Like the trial court, this Court applies the substantial and material evidence standard in reviewing the agency's findings of fact. *Bobbitt v. Shell*, 115 S.W.3d 506, 509–10 (Tenn. Ct. App. 2003). Substantial and material evidence is "such relevant evidence as a reasonable mind might accept to support a rational conclusion" and to furnish a reasonably sound basis for the decision under consideration. *City of Memphis v. Civil Serv. Comm'n*, 216 S.W.3d 311, 316 (Tenn. 2007) (quoting *Jackson Mobilphone Co. v. Tenn. Pub.*

11

*Serv. Comm'n*, 876 S.W.2d 106, 110–11 (Tenn. Ct. App. 1993)); *Dickson v. City of Memphis Civil Serv. Comm'n*, 194 S.W.3d 457, 464 (Tenn. Ct. App. 2005); *Pruitt v. City of Memphis*, 2005 WL 2043542, at *7 (Tenn. Ct. App. Aug. 24, 2005); *Bobbitt*, 115 S.W.3d at 510.45 As directed by the statute, we take into account whatever in the record fairly detracts from the weight of the evidence, but we may not substitute our own judgment on questions of fact by re-weighing the evidence. *See* Tenn. Code Ann. § 4-5-322(h)(5)(B). When the agency conducts a hearing and can evaluate the witnesses as they testify, this Court gives the tribunal's credibility determinations great weight. *Pruitt*, 2005 WL 2043542, at *7. Moreover, the substantial and material evidence standard does not justify reversal of an administrative decision only because the evidence could also support another result. *Martin v. Sizemore*, 78 S.W.3d 249, 276 (Tenn. Ct. App. 2001). Rather, we may reject an administrative determination only if a reasonable person would necessarily arrive at a different conclusion based on the evidence. *Id.* Likewise, Tennessee Code Annotated Section 4-5-322(h)(4) permits a reviewing court to modify or reverse an administrative decision if it is "[a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Tenn. Code Ann. § 4-5-322(h)(4) (2005). A decision unsupported by substantial and material evidence is arbitrary and capricious. *City of Memphis v. Civil Serv. Comm'n*, 216 S.W.3d 311, 315 (Tenn. 2007). Yet, a clear error of judgment can also render a decision arbitrary and capricious notwithstanding adequate evidentiary support. *Id.* at 316. A decision is arbitrary or capricious if it "is not based on any course of reasoning or exercise of judgment, or . . . disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion." *Id.* (quoting *Jackson Mobilphone*, 876 S.W.2d at 110–11).

*City of Memphis*, 238 S.W.3d at 243.

Because the Commission's decision involves the termination of a City employee, we also must consider the standard of review contained in the Charter of the City of Memphis. According to this Court:

Section 246 of the Charter of the City of Memphis provides that "[t]he City may terminate, suspend, or demote an employee for just cause, and the employee shall be given a written notice of the reasons for the action taken." Charter of City of Memphis § 246 (renumbered as section 7 under article 34 by ordinance number 3233, adopted Aug. 31, 1982). Moreover, when an employee appeals to the Civil Service Commission for a review of disciplinary action, section 248 provides that "the burden of proof required to sustain the action of the city shall be by a preponderance of the evidence. If, after a presentation of the proof, the commission finds that there exists a reasonable basis for the disciplinary action taken, the action of the City shall be sustained." Charter of City of Memphis § 248 (renumbered as section 9 under article 34 by ordinance number 3233, adopted Aug. 31, 1982).

*City of Memphis*, 238 S.W.3d at 243–44.

A chancery court reviewing a case under Tennessee Code Annotated Section 4-5-322 "shall reduce its findings of fact and conclusions of law to writing and make them parts of the record." Tenn. Code Ann. § 4-5-322(j). This Court has indicated that Tennessee Code Annotated Section 4-5-322(j) requires that the chancery court make "detailed findings" to support its ruling. *Swift Roofing, Inc. v. State*, No. M2010-02544-COA-R3CV, 2011 WL 2732263, at *7 (Tenn. Ct. App. July 13, 2011). Findings of fact and conclusions of law in other contexts have been held to "facilitate appellate review by affording a reviewing court a clear understanding of the basis of a trial court's decision." *Lovlace v. Copley*, 418 S.W.3d 1, 34 (Tenn. 2013) (citing *Estate of Bucy v. McElroy*, No. W2012-02317-COA-R3-CV, 2013 WL 1798911, at *3–4 (Tenn. Ct. App. Apr. 26, 2013)).

In this case, the trial court's ruling is sparse at best. The final order states:

> 1. That the Civil Service Commission erred when it determined that the [Memorandum of Understanding] is a binding method to impose discipline upon an employee.

> 2. The Court finds that without consideration of the Memorandum of Understanding as a basis for discipline, the notice of disciplinary action provided to [Ms. Wilson] at most supports suspension, not termination, based on the City of Memphis Personnel Policies and Departmental Work Rules.

13

3. That the Petitioner is reinstated to her previous position with back pay and benefits.

Although the trial court entered two other orders regarding the effect, if any, of the Memorandum of Understanding, they offer little illumination as to the trial court's reasoning beyond what is stated above. From these orders it is difficult to discern the exact basis for the trial court's ruling, specifically with regard to which of the Tennessee Code Annotated Section 4-5-322(h) prongs serves as basis for reversing the decision of the Commission.

The Tennessee Supreme Court previously considered a case wherein one party alleged that the factual findings and legal conclusions of the Public Service Commission were fatally insufficient. *See CF Indus. v. Tennessee Pub. Serv. Comm'n*, 599 S.W.2d 536 (Tenn. 1980). Therein, the Court held that the requirement that the agency make findings of fact "'is not a mere technicality but is an absolute necessity without which judicial review would be impossible.'" *Id.* at 541 (quoting *Levy v. State Bd. of Examiners, Etc.*, 553 S.W.2d 909, 911 (Tenn. 1977)). The Court explained that:

> The sufficiency of an agency's findings of fact must be measured against the nature of the controversy and the intensity of the factual dispute. It is obvious that where there is no disputed issue of fact and the sole question before the agency is the proper conclusion to be drawn from the undisputed facts and the application of the correct legal rules, the record need not be burdened with detailed findings of fact. In such a case the facts need only be recited.

> At the other end of the spectrum are those cases wherein the issues of fact are sharply contested and the proof is conflicting. There a detailed finding of fact dovetailed to the record is a practical and legal imperative. Thus, the nature of the finding necessarily varies from case to case.

*CF Indus.*, 599 S.W.2d at 541; *see also* Charter of City of Memphis § 248 ("The decision of the Commission shall be stated in writing and shall include the Commission's findings of fact and conclusions therefrom.").

This Court in *Mack v. Civil Serv. Comm'n of City of Memphis*, No. 02A01-9807-CH-00215, 1999 WL 250180 (Tenn. Ct. App. Apr. 28, 1999), however, held that the specificity requirement found in *CF Industries* does not apply to the findings and conclusions of the trial court, but only to the findings of the agency. *Id.* at *4. As this Court explained:

14

> The standard of review at the trial level and appellate level is the same. The court must review the factual issues and the decision of the Commission must stand if it is supported by substantial and material evidence. The findings of fact relevant to this inquiry are the findings of fact of the Commission. While § 4-5-322 requires the reviewing court to reduce its findings of fact and conclusions of law to writing and makes them part of the record, the specificity requirement applies to the Commission. The purpose of findings and conclusions is to aid the court in determining the reasons behind the *agency* decision, and whether the *agency's* conclusion is based on sufficient evidence. *CF Indus*[*.*, 599 S.W.2d] at 541 (emphasis added).

*Mack*, 1999 WL 250180, at \*3. Accordingly, the Court held that the trial court's findings, though sparse, were sufficient to afford appropriate appellate review. *Id.* at \*4; *but see* ***King v. Shelby Cnty. Gov't Civil Serv. Merit Bd.***, No. W2006-01079-COA-R3-CV, 2006 WL 2506718, at \*5 (Tenn. Ct. App. Aug. 31, 2006) (vacating the order of the trial court for, inter alia, failing to make findings of fact and conclusions of law pursuant to Tenn. Code Ann. § 4-5-322(j)); ***Barrom v. City of Memphis Civil Serv. Comm'n***, No. W2011-01248-COA-R3-CV, 2011 WL 5420365, at \*5 (Tenn. Ct. App. Nov. 9, 2011) (vacating the trial court's judgment on other grounds, but noting that the trial court's order was also deficient in that it failed to make findings of fact and conclusions of law pursuant to Tenn. Code Ann. § 4-5-322(j)).

The trial court's order in this case, however, fails to make sufficient findings to afford appropriate appellate review. First, we note that although an interlocutory order by the trial court indicated that the supplemental order of the Commission was deficient for failing to contain the signature of two commissioners, the trial court's final order makes no mention of this purported deficiency. Although Ms. Wilson at oral argument appeared to assume that the trial court's ruling regarding the deficiency of the supplemental order remained in place, that conclusion is not necessarily warranted. Instead, because of the order's interlocutory nature, it was subject to change by the trial court at any time prior to entry of the final judgment. *See Fox v. Fox*, 657 S.W.2d 747, 749 (Tenn. 1983) (holding that an interlocutory order "can be revised at any time before the entry of judgment adjudicating all the claims and rights and liabilities of all parties" (citing *Stidham v. Fickle Heirs*, 643 S.W.2d 324, 325 (Tenn. 1982)). Due to the omission of any discussion regarding this purported deficiency in the trial court's final order, we would be required to speculate whether the trial court maintained its conclusion that the supplemental order was fatally deficient, or instead, agreed with the Commission that the retirement of one member of the panel was a sufficient excuse for the deficiency.

15

The trial court's order also makes no mention of whether it considered only the original order issued by the Commission, or also the supplemental order issued by the Commission after remand to the trial court. Additionally, the trial court's order fails to cite any legal authorities utilized to reach its decision or the narrow standard of review applicable in these types of cases. Further, the order contains no recitation of the facts relied upon by the trial court in reaching its decision.

More importantly, the trial court's order is unclear as to the basis for the trial court's decision. The trial court makes no mention of the evidence presented to the Commission; accordingly, we can only assume that the trial court found that the Commission's determination that Ms. Wilson's conduct violated the Public Works Rules, the Personnel Manual, and the Memorandum of Understanding was supported by substantial and material evidence. Instead, the trial court's order can be construed in two ways: (1) that the "notice of disciplinary action"[7] provided to Ms. Wilson did not provide sufficient notice because the April 9, 2009 decision letter provided that Ms. Wilson's employment would be terminated on the basis of the Memorandum of Understanding, a purportedly inappropriate basis for discipline; or (2) that Ms. Wilson's violations of the Public Works Rules and the Personnel Manual, considered alone, were insufficient to support the harsh penalty of termination. From the trial court's order, we are unable to discern which, if any, of these bases the trial court actually relied upon. Accordingly, we are "left to wonder on what basis the court reached its ultimate decision." *In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009). Thus, the trial court's findings of fact and conclusions of law are clearly deficient.

The confusion regarding the trial court's order was further demonstrated at oral argument. During a colloquy between this Court and counsel for Ms. Wilson regarding the trial court's judgment, counsel for Ms. Wilson attempted to clarify his interpretation of the trial court's order as involving the notice provided to Ms. Wilson by the May 15, 2009 decision letter, rather than the severity of the penalty imposed. A member of this panel noted, however, that "given that the order doesn't say much else, it doesn't say where there is not substantial and material evidence to support the Civil Service Commission's findings. It makes the comment that it supports suspension but not termination, and therefore, she should be reinstated." Counsel for Ms. Wilson argued that Ms. Wilson's position in the trial court was that the Commission's findings were either "[i]n excess of the statutory authority" or "[m]ade upon unlawful procedure" because the decision letter only gave Ms. Wilson notice

---

[7] To even reach this issue, we must assume that by taking issue with the "notice of disciplinary action," the trial court is referring to the May 15, 2009 decision letter, rather than the April 9, 2009 Notice of Fact Finding Hearing.

that her employment would be terminated for her violations of the Memorandum of Understanding, rather than any of the appropriate authorities. *See* Tenn. Code Ann. § 4-5-322(h). The panel member responded that "the trial court's order doesn't say that. The trial court's order never mentions unlawful procedure or that there's not substantial and material evidence to support the [] Commission's findings." Instead, the panel member indicated that a reasonable construction of the trial court's final order was not that the May 15, 2009 decision letter provided inadequate notice of termination, but that the penalty was too severe, considering only the violations of the Public Works Rules and the Personnel Manual. Clearly, this interaction indicates that the trial court's order fails to provide a sufficiently clear indication of its reasoning to facilitate appellate review.

As previously discussed, because the standard of review requires this Court to review the decision of the Commission rather than the trial court, a trial court's failure to make sufficient findings of fact and conclusions of law will not always be fatal. *See Mack*, 1999 WL 250180, at *3. Instead, we are required to review the Commission's decision to ensure that the petitioner's rights have not been prejudiced by any of the five methods contained in Tennessee Code Annotated Section 4-5-322(h). *See Metro Gov't of Nashville, Etc. v. Schacklett*, 554 S.W.2d 601 (Tenn. 1977); *Goldsmith v. Roberts*, 622 S.W.2d 438 (Tenn. Ct. App. 1981). In this case, however, Ms. Wilson has failed to offer any argument in her brief on the correctness of the Commission's ruling. Rather than focus on the Commission's decision, or indeed, even the trial court's decision, Ms. Wilson devotes her brief to the jurisdictional issue considered *supra*. Accordingly, Ms. Wilson's brief contains no argument regarding what, if any, errors were made by the Commission that prejudiced her rights.[8] Typically, the burden to show that an agency's decision should be reversed pursuant to Tennessee Code Annotated Section 4-5-322(h) falls on the party seeking to overturn the agency decision. *See generally Sierra Club v. Tenn. Dep't of Health & Env't, Div. of Water Pollution Control*, No. 01-A-01-9203CH00131, 1992 WL 288870, at *2 (Tenn. Ct. App. Oct. 16, 1992) (holding that a party appealing from an agency decision "must carry a heavy burden to show that the Board's findings were arbitrarily made").[9] Thus, the fact that her

---

[8] Ms. Wilson's counsel did discuss the purported illegalities in the Commission's decision at oral argument. However, oral argument is not a substitute for adequate briefing. *See generally PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Mabry*, 402 S.W.3d 654, 662 (Tenn. Ct. App. 2012) (holding that the appellant waived an issue where he raised the issues at oral argument, but failed to raise it in his appellate brief).

[9] Further, the failure to raise an affirmative issue in the statement of issues section of the party's appellate brief or to argue an issue in the argument section of an appellate brief generally constitutes a waiver of the issue on appeal. *See Childress v. Union Realty Co.*, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002). Rule 27 of the Tennessee Rules of Appellate Procedure, however, generally only requires that an appellee's brief contain a statement of the issues presented for review "[i]f [the] appellee is also requesting relief from the judgment." Tenn. R. App. P. 27(b); *see also Forbess v. Forbess*, 370 S.W.3d 347, 357–58 (Tenn. Ct. App.

brief contains no argument regarding any alleged errors committed by the Commission in rendering its decision prevents this Court from meaningfully reviewing the merits of this case.

Under these circumstances, we must conclude that appellate review is hampered in two ways: (1) by the trial court's failure to make findings of fact and conclusions of law as required by Tennessee Code Annotated Section 4-5-322(j); and (2) by Ms. Wilson's failure to offer any argument regarding the errors made by the Commission in her appellate brief. Although we may have been inclined to overlook one deficiency, coupled together, these deficiencies make appellate review unworkable. We cannot discern the trial court's reason for reversing the decision of the Commission, and Ms. Wilson's brief offers little to no help in determining what errors were purportedly made by the Commission that support a reversal of the termination of Ms. Wilson's employment. In our view, the best course of action is to allow both parties to re-litigate this issue in the trial court. We understand that this will cause a further delay in this case; however, we cannot ignore the General Assembly's clear directive that trial courts reviewing agency decisions make appropriate findings of fact and conclusions of law to support their decisions or our directive to only consider the issues properly raised and argued by the parties. *See* Tenn. Code Ann. § 4-5-322(j); Tenn. R. App. P. 13(b). Accordingly, the judgment of the trial court reversing the decision of the Commission is vacated, and this cause is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed one-half to Appellant, the City of Memphis, and its surety, and one-half to Appellee, Dyanna Wilson, for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE

2011) (discussing the briefing requirements applicable to appellees raising affirmative issues). Because Ms. Wilson prevailed in the trial court in reversing the judgment of the Commission and only seeks to uphold the trial court's judgment, she does not appear to be seeking any affirmative relief from this Court. Accordingly, her failure to brief this issue does not result in a waiver.